Theodore **WOZNIAK,** Jr. and Karen Wozniak, Plaintiffs,

v.

**Jeffrey T. CAVENDER, T. Siewert, and Village of Orland Park, a municipal corporation, Defendants.**

**No. 93 C 3689.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 9, 1995.

Clark M. Raymond, Chicago, IL, for plaintiffs Theodore Wozniak, Jr., Karen Wozniak.

Richard T. Wimmer, Dennis G. Walsh, James Vincent Ferolo, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, for defendants Jeffrey T. Cavender, T. Siewert, Village of Orland Park, a municipal corp.

## MEMORANDUM OPINION AND ORDER

CASTILLO, Judge.

In the early hours of May 12, 1992, Theodore Wozniak ("Wozniak") crashed his all terrain vehicle ("ATV") in a ditch while being pursued by Orland Park police officers Jeffrey Cavender ("Cavender") and Troy Siewert ("Siewert"). Wozniak ("Wozniak") and his wife Karen Wozniak are now suing Cavender and Siewert (count I) and the Village of Orland Park (count V) under 42 U.S.C. § 1983, alleging that the officer's pursuit of Wozniak in conjunction with his subsequent crash constituted an unreasonable seizure resulting in serious and permanent injuries to Wozniak. Wozniak's municipal liability claim against the Village is premised on the position that the Village maintained a custom or policy of encouraging unreasonable or excessive force by police officers. In addition to these federal causes of action, the plaintiffs also maintain the following state law claims: Karen Wozniak's claims for loss of consortium (counts II, VI, VIII, and X); Wozniak's claim of assault (count VII); and Wozniak's claim of reckless operation of a motor vehicle (count IX). The defendants move for summary judgment on all counts.

The defendants argue that Wozniak's crash did not constitute a Fourth Amendment seizure and even if it is deemed to be a seizure it was not an unreasonable seizure prohibited by the Fourth Amendment. The defendants also contend that Cavender and Siewert are entitled to qualified immunity. With respect to the municipal liability claim, the Village contends that there is no evidence in the record supporting plaintiffs' claim of an official policy or custom of Orland Park

encouraging unreasonable or excessive force. Finally, defendants maintain that the supplemental state law claims are precluded by the Illinois Tort Immunity Act ("the Act"), 745 ILCS 10/2–109 and 10/2–202.

## FACTS

The undisputed facts gleaned from the parties' Local Rule 12(M) and (N) statements of material facts as to which there is no genuine issue are as follows.[1]

On May 11, 1992, Wozniak and a friend, Charles Wilcox ("Wilcox"), went to Wilcox's brother's home. Wozniak and Wilcox arrived at Mike Wilcox's home at approximately 1:00—2:00 in the afternoon and stayed there until approximately midnight. When they departed, they were both on ATVs. During the course of the day, Wozniak and Wilcox had played frisbee, basketball, and pool and had driven the ATVs over various fields in the vicinity of Mike Wilcox's home.

When Wozniak and Wilcox left Mike Wilcox's house in the early morning of May 12, 1992, they travelled over various fields under Commonwealth Edison power lines (referred to herein as the Commonwealth Edison Right-of-Way) and ultimately ended up in a forest preserve area. En route to the forest preserve, Wozniak and Wilcox drove across the drainage ditches at 80th Avenue (It was this very drainage ditch site to which Wozniak would subsequently return and crash while being pursued by the Orland Park police.) Wozniak testified that the access road was approximately five to ten feet wide—wide enough to accommodate two ATVs travelling side-by-side. Wozniak also testified that the ditch appeared to be approximately two (or three) to four feet deep and that when they reached the drainage ditch, Wilcox cautioned him about the need to slow down.[2]

Upon leaving the forest preserve land, Wozniak and Wilcox travelled the same route, although in the opposite direction, with the intention of returning to Mike Wilcox's house. At some point, Wozniak and Wilcox were spotted by Cavender and Siewert who decided to effect a traffic stop of the ATVs while riding in a marked Orland Park police squad car.[3] Like many facts regarding the specifics of the police pursuit, the exact location at which Cavender and Siewert first

1. Local Rule 12(M) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." The movant's statement must contain "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth." Defendants' statement shall be cited herein as "Defs.' Facts ¶——." Similarly, Local Rule 12(N)(3)(a) requires the nonmoving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials. Plaintiffs' statement shall be cited herein as Pls.' Facts ¶——. All material facts set forth in either party's statement are deemed admitted unless controverted by the statement of the opposing party. Local Rule 12(M) and 12(N)(3)(b); see also Flaherty v. Gas Research Inst., 31 F.3d 451, 453 (7th Cir.1994); Waldridge v. American Hoechst Corp., 24 F.3d 918, 921–22 (7th Cir.1994).

2. Wozniak stated that, on the morning in question, it was his impression that the ditch could be safely traversed by an ATV if it was travelling slow enough—which he opined to be "anywhere from a couple of miles an hour to five miles an hour." Wozniak Dep. at 26.

3. Siewert testified that the decision to stop the ATVs was due to the facts that it was 2:00 in the morning, the ATVs were on the roadway where they did not belong, appeared suspicious, and presented a danger because they did not have lights on. Siewert Dep. at 109. Cavender also testified that the decision resulted from the ATVs suspicious nature (i.e., 2:00 in the morning, no lights, etc.). Cavender Dep. at 91–92. Although plaintiffs dispute the defendants' contention that Wozniak and Wilcox did not have their ATVs' lights on, the Court finds this fact to be largely immaterial because even if the ATV lights were on, Cavender and Siewert would still have been justified in effecting a traffic stop. Wozniak was issued citations under the Illinois Vehicle Code for: improper operation of an ATV, fleeing and eluding, driving under the influence of alcohol, and driving on a revoked driver's license. He also was issued an Orland Park ticket for operation of a motor vehicle on park land. All of these charges were ultimately dismissed. Of course, the fate of these charges does not affect whether or not Cavender and Siewert had probable cause to stop Wozniak in the first place since the probable cause determination is made at the moment the arrest is made. Maltby v. Winston, 36 F.3d 548, 557 (7th Cir.1994). In any event, the Court's analysis of the merits of Wozniak's section 1983 claim was not influenced by the fact that Wozniak was charged or that the charges were subsequently dismissed.

spotted Wozniak and Wilcox is a matter of some dispute.[4] Wilcox's deposition testimony, as well as that of Cavender and Siewert indicates that the officers sighted and began to follow the ATVs at Catalina street. *See* Wilcox Dep. at 33; Siewert Dep. at 80–81; Cavender Dep. at 67.[5] Wozniak maintains that Cavender and Siewert began their pursuit of the ATVs where Wheeler intersects the Right-of-Way, approximately two blocks west of Catalina. Wozniak Dep. at 489.[6] For purposes of this motion, the Court shall resolve this conflict in the testimony in favor of Wozniak.

Wozniak testified that as he was crossing Wheeler in a westbound direction onto the Right-of-Way, he noticed a car parked in the bend approximately twenty to forty yards away that accelerated towards him. Wozniak stated that he could not tell at that time that the car was a marked squad car. After travelling approximately twenty to fifty feet on the Right-of-Way, Wozniak testified that the police car "flew up behind us," Wozniak Dep. at 46, "and then I realized it was a police car because he had his [Mars] lights [flashing]." Wozniak Dep. at 46–47; *see also*

*id.* at 58.[7] Although Wozniak first testified that he could not say how far behind him the police car was, he subsequently stated that the car was "about 10 to 20 feet behind me and accelerating at a high rate of speed." Wozniak Dep. at 48–49. When asked what was the closest distance that the police car ever came to him from this point to the accident site at 80th Avenue, Wozniak stated, "I could not say the exact distance, because, you know, I only looked back once or twice...." *Id.* at 48. Wozniak subsequently stated that the squad car appeared to be approximately ten to twenty feet behind him and that this was the closest that he ever saw the police car in relation to his ATV. *Id.* at 49, 124. The only other point at which Wozniak stated he looked back was approximately 100 to 150 yards before reaching 80th Avenue and at that time the squad car continued to be ten to thirty feet behind his ATV. *Id.* at 54, 57. The squad car's emergency lights were still on at that point. *Id.* at 56. When asked if the squad car was closing in on him at that point, Wozniak testified that "He [the police] seemed to be keeping a well interval," and that they [Wozniak and the police] were travelling at rough-

---

4. Although, as we have noted, there is dispute about much of what transpired during the police chase, the Court finds that many of the disputes are immaterial to the ultimate resolution of this case and even if the disputes are resolved in favor of the plaintiffs, the defendants are still entitled to judgment as a matter of law. Therefore, despite the existence of some factual disputes, summary judgment remains an appropriate vehicle for resolving this case.

5. Cavender and Siewert testified that they were stopped at a stop sign at the intersection of Wheeler Drive and Catalina Drive heading eastbound on Wheeler when they spotted the ATVs crossing Catalina from one parcel of Right-of-Way property onto another. The Right-of-Way property is situated just north of Wheeler at this point. Cavender and Siewert testified that they turned north onto Catalina in pursuit and then followed the ATVs westbound onto the Right-of-Way. Approximately two blocks further ahead to the West, Wheeler curves to the North intersecting the Right-of-Way—thus, to proceed westerly along the Right-of-Way Wheeler must be crossed. The Right-of-Way then continues uninterrupted until 80th Street where the drainage ditch is located and the accident in this case occurred.

6. The parties also dispute where Cavender and Siewert first turned on their flashing overhead

lights ("Mars lights"), flashing grille lights, and flashing headlights. Cavender and Siewert testified that they turned on their flashing lights upon initiating the pursuit when they turned on to Catalina. *See* Cavender Dep. at 69; Siewert Dep. at 84. Wilcox testified that he noticed the flashing Mars lights on the squad car within one-half of a block after first noticing the squad car when he crossed the street—presumably Catalina—and getting onto the Right-of-Way. Wilcox Dep. at 33–37. Wozniak testified that he did not notice any flashing lights until he was approximately 20–50 feet onto the Right-of-Way after crossing Wheeler street. Pl.'s Facts ¶ 9; Wozniak Dep. at 47.

7. Wozniak admitted during his deposition that paragraph 14(A) of his complaint which states, "Defendants failed to use emergency flashers, sirens or other means to alert Plaintiff that they were police officers" was untrue. Wozniak Dep. at 52. Wozniak also stated during his deposition that the paragraph in his complaint stating that the police pursuit began at Catalina was incorrect. Wozniak Dep. at 42, 491–92. These serious misstatements in Wozniak's complaint give the Court great pause and prompt the Court to remind Wozniak's counsel of his obligation under Rule 11 to make a reasonable inquiry into the evidentiary support of factual allegations made in the complaint.

ly the same speed, *id.*[8] This was the last point at which Wozniak turned around and saw the police. *Id.* at 57, 73.[9]

By the time he reached the access road leading to 80th Avenue and the drainage ditches, Wozniak was unaware of the distance between himself and the police car. *Id.* at 111. Indeed, in response to a deposition question, Wozniak acknowledged that by the time he reached 80th Avenue, he "had no idea where the police car was exactly." *Id.* at 124–25. However, he testified that he believed the squad car was still right behind him because he could hear the police siren. *Id.* at 73–74, 287.

Although he could not say exactly—because his ATV did not have a speedometer—Wozniak testified that his maximum rate of speed during the police chase was approximately 35 to 45 miles per hour.[10] *Id.* at 70. When he reached the access road leading to 80th Avenue, Wozniak testified that he was braking and downshifting such that by the middle of the access road his speed was approximately ten to twenty miles per hour. *Id.* at 72. As he approached 80th Avenue,

Wozniak continued to brake and downshift decelerating to approximately five to ten miles per hour as he crossed the Avenue. *Id.*[11] By the time of his leaving the Avenue and entering the ditch, Wozniak estimated that his speed was approximately three to six miles per hour. *Id.* at 79. Wozniak crashed upon entering the ditch on the west edge of 80th Avenue.[12]

It is uncontroverted that almost from the outset of the chase, Wozniak accelerated and thereafter was ahead of Wilcox for the entire duration of the chase. Wilcox Dep. at 36–37; 39; 49; 52; 53. Wilcox stated that his ATV was approximately 20 feet behind Wozniak's. *Id.* at 39; *see also id.* at 49 (20 to 30 feet).[13] Wilcox also stated that the squad car followed him at a distance of approximately one or one-and-one-half to three or four car lengths. *Id.* at 61. Wilcox testified that right before the accident he could no longer hear the squad car behind him, *id.* at 40–41, and that at no point during the chase did he hear a police siren, *id.* at 37.[14] When asked if it ever occurred to him to stop and allow the police officers to catch up with him,

---

**8.** In response to the question "At any point did you intend to stop for the police car?", Wozniak stated: "Every time I slowed down, he just—you know, the interval closed up, and he was close anyway. I did not look back, but I could hear the squad car right behind me." Wozniak Dep. at 178.

**9.** In explaining his conduct during the chase, Wozniak testified that he "was trying to get away from the cop car so it could not hit me because I felt like he was going to hit me." Wozniak Dep. at 94. When asked during deposition why he did not stop when he first knew that it was a police car behind him, Wozniak stated, "I felt that he wasn't going to be able to stop if I stopped. I felt like the only thing I could do was accelerate so I wouldn't get hit." *Id.* at 490. Wozniak also testified that he did not think he could safely turn out of the squad car's way. *Id.* at 491.

**10.** Wilcox approximated that he "went up to about 35 or 40 miles an hour." Wilcox Dep. at 36

**11.** Wilcox testified that Wozniak was travelling at approximately three to five miles per hour when he crossed 80 Avenue. Wilcox Dep. at 55.

**12.** Wozniak testified that he was aware of the ditch on the west side of 80th Avenue. When asked why he did not turn either right or left on 80th instead of proceeding westbound, Wozniak

answered, "I don't know." Wozniak Dep. at 242. When asked if he could have turned, Wozniak answered "Yes." *Id.* He further stated that he did not observe the police car do anything to prevent him from turning onto 80th Avenue and that it was his choice to proceed westbound. *Id.* at 242–45. Wozniak also testified as follows:

> Q. Given the speed that you were going, which you stated was under ten miles an hour when you were on the street, could you have turned left or right to enter the ditch at a different place?
> A. I guess. Yes. ·

*Id.* at 245. However, elsewhere in his testimony, Wozniak testified that he felt it was not possible to safely make a right or left turn on 80th Avenue. *Id.* at 249.

**13.** Quite aside from Wilcox's testimony as to this point, the fact that Wozniak was ahead of Wilcox by a distance of approximately twenty feet and remained ahead throughout the entire pursuit is deemed admitted as a consequence of plaintiffs' failure to controvert this factual assertion in defendants' Local Rule 12(M) statement of material facts. *See* Defs.' Facts ¶¶ 16, 22; *see also id.* ¶ 24.

**14.** Cavender testified that the squad car's siren was not activated during the chase. Cavender Dep. at 89–90.

Wilcox testified, "No, they were right behind me up until I slowed down for 80th and the officers slowed down too." *Id.* at 64.[15]

Cavender testified that he was aware of the existence of the drainage ditches at 80th Avenue and that he had a general knowledge of how steep they were. Cavender Dep. at 57–58. While testifying that it would be "extremely difficult to drive a car across the drainage ditches," *id.* at 57, Cavender expressed no opinion as to whether it would be difficult to cross the ditches on an ATV because he had never driven one, *id.* at 57–58.[16]

At its core, Wozniak's complaint alleges that Cavender and Siewert effected an unreasonable seizure by forcing him into the ditch—through their pursuit—at an unsafe speed.

### ANALYSIS

#### Summary Judgment Standard

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1032 (7th Cir.), *cert. denied,* 488 U.S. 909, 109

S.Ct. 261, 102 L.Ed.2d 249 (1988). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Finally, we note that mere conclusory assertions, unsupported by specific facts, made in depositions or affidavits opposing a motion for summary judgment, are not sufficient to defeat a proper motion for summary judgment. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990) ("The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985) ("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact"); *see also Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1057–58 (7th Cir.1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.")

#### Wozniak's Fourth Amendment Claim

The parties all agree, as does the Court, that the Supreme Court's analysis in *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), provides the controlling standards for analyzing Wozniak's claim that Cavender and Siewert effected an unreasonable seizure. In *Brower,* the plaintiff's decedent ("Brower") had crashed his stolen vehicle into a police roadblock following a high speed chase. Like Wozniak, the plaintiff brought suit under Section 1983, claiming, *inter alia,* that the

**15.** Wilcox further testified that it was his intention to get away from the police officers and to return to his brother's house. Wilcox Dep. at 64.

**16.** In their Local Rule 12(N)(3)(b) statement of additional facts, plaintiffs state that, "Defendants knew of the location of the ditch and that it created a dangerous hazard for Right-of-Way

traffic. (JC at 56–57, 61; TS at 117).'' Pls.' Add'l Facts ¶ 3. However, none of the cited deposition transcript pages are included with plaintiffs' exhibits and hence the Court is unable to ascertain whether plaintiff's factual assertion is supported by the deposition testimony.

defendants had effected an unreasonable seizure. The plaintiff alleged that the police had erected a "deadman's roadblock" by positioning an 18-wheel truck across both lanes of a two-lane highway in the path of Brower's flight and that they had concealed the roadblock by placing it behind a curve, leaving it unilluminated, with a police car's headlights aimed in such a fashion as to blind Brower on his approach. 489 U.S. at 594, 109 S.Ct. at 1380. The district court dismissed the plaintiff's Fourth Amendment claim holding that it was not unreasonable, under the circumstances, to erect a roadblock. The Ninth Circuit affirmed on the basis that no Fourth Amendment "seizure" had occurred. The Supreme Court reversed, finding that the allegations of the complaint sufficiently alleged a "seizure" to withstand a motion to dismiss. *Id.* at 599, 109 S.Ct. at 1382-83.

In reaching this holding, the *Brower* Court noted that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Id.* at 596, 109 S.Ct. at 1381. Reinforcing the "intentional" quality of a "seizure", the Court emphasized that "the detention ... must be willful." Thus, the Court concluded:

> It is clear ... that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ..., nor whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement ..., but only when there is a governmental termination of freedom of movement through means intentionally applied.

*Id.* at 596-97, 109 S.Ct. at 1381-82. Accordingly, the Court distinguished the facts as alleged in *Brower*, from a hypothetical police-chase scenario "in which the suspect unexpectedly loses control of his car and crashes." *Id.* at 595, 109 S.Ct. at 1381. The Court agreed that no unconstitutional seizure occurs in the hypothetical scenario because there:

> The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different

means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Id.* at 595-98, 109 S.Ct. at 1381. Although the facts of this case present an extremely unfortunate circumstance, they plainly fall well within the scope of the scenario discussed in *Brower*.

The evidence before the Court fails to raise a triable issue as to whether Cavender and Siewert intended Wozniak "to be stopped by the physical obstacle of the [80th Avenue ditch]." *Brower*, 489 U.S. at 599, 109 S.Ct. at 1382. Rather, the record—construed most liberally in favor of Wozniak—establishes little more than that Wozniak accelerated away from the police into the ditch based on his own subjective fear that he would be hit by the squad car if he did not so accelerate. However, Wozniak's subjective belief, standing alone, is insufficient to constitute probative evidence of Cavender and Siewert's alleged intent to run him into the ditch.

Perhaps on a different factual record—one which provided some probative support for Wozniak's subjective beliefs—such subjective beliefs might provide support for a claim predicated on the intent of the pursuing officers. However, the record before this Court provides no such support. Instead, the record establishes the following: Upon sighting Wozniak and Wilcox, Cavender and Siewert sped towards the two—as police officers are apt to do when attempting to position themselves for effecting a traffic stop. Within twenty to fifty feet after initiating their pursuit at Wheeler Avenue, Cavender and Siewert activated their flashing Mars lights, and Wozniak looked back, saw the lights and realized that he was being followed by the police. However, rather than attempting to stop, Wozniak accelerated—ostensibly out of fear that he would be hit by the officers. By his own account, Wozniak continued his flight, looking back to ascertain the location of the police only once, until he crashed in the ditches at 80th Avenue. Wozniak's own

testimony also establishes that the police maintained a distance of approximately ten to twenty feet behind him throughout the chase, travelling at roughly the same speed as was he.[17] Significantly, by his own account, when Wozniak approached 80th Avenue, he was able to slow his ATV from 35 to 45 m.p.h. down to 10 to 20 m.p.h. on the access road, and again to 5 to 10 m.p.h. as he crossed 80th Avenue, and finally to approximately 3 to 6 m.p.h. as he entered the ditch. There is no evidence that Cavender and Siewert attempted to ram Wozniak—or otherwise force him into the ditch—during this period of deceleration. Similarly, Wilcox testified that although the police were "right behind [him] until [he] slowed down for 80th [Avenue]," when he did slow down, "the officers slowed down too." Wilcox Dep. at 64. Thus, the record cannot sustain the claim that Cavender and Siewert evidenced any intent to stop Wozniak by forcing him into the ditch.[18]

In the final analysis, Wozniak's Fourth Amendment claim is predicated on no more than the fact that Cavender and Siewert followed him relatively closely during the course of a pursuit that culminated in Wozniak losing control of his ATV and crashing in a ditch. In the absence of any evidence of conduct above and beyond the mere act of pursuit itself, a factfinder could not reasonably find that Cavender and Siewert intended to terminate Wozniak's freedom of movement by forcing him to crash into the ditch at 80th Avenue. In sum, there is no basis to conclude anything but that this unfortunate accident was the unintended consequence of

Cavender and Siewert's pursuit. Accordingly, the Court finds no genuine issue of material fact as to whether a Fourth Amendment "seizure" occurred. It did not. Therefore, defendants are entitled to summary judgment on count I of Wozniak's complaint.

■ Even if the Court were to conclude that a Fourth Amendment seizure had occurred and that it was unreasonable (an issue we do not reach), we would still find that summary judgment must be granted in favor of Cavender and Siewert based on their entitlement to qualified immunity. Under the facts of this case, a factfinder could not reasonably conclude that Cavender and Siewert had violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiffs have directed the Court's attention to no caselaw, nor is the Court aware of any, in which a finding of an unreasonable seizure was predicated solely on the defendant police officers' hot pursuit of a fleeing suspect—even when that pursuit follows the suspect into a known and dangerous obstacle resulting in injury to the suspect. Nor does any caselaw of which we are aware suggest such an outcome. Thus, it can not be concluded that Cavender and Siewert reasonably should have known that their conduct may have violated a clearly established right.

■ Because Karen Wozniak's loss of consortium claim in count II derives from Wozniak's Fourth Amendment claim, *see Brown v. Metzger*, 104 Ill.2d 30, 83 Ill.Dec. 344, 347–

17. The Court's conclusion is not altered by Wozniak's sole remark that "Every time I slowed down, he just—you know, the interval closed up...." Although Wozniak is entitled to all reasonable inferences, the Court cannot conclude that this testimony warrants the inference that Cavender and Siewert were bent on hitting Wozniak with their squad car or on forcing him into the ditch. It is hardly surprising that the gap between Wozniak and the squad car narrowed when he slowed down—we know of no reason to impose upon the police a rule that they must maintain some arbitrary minimum distance from suspects whom they are pursuing (particularly when the suspect has already manifested an intent to elude); but, this hardly compels the conclusion that the defendants were determined to ram Wozniak or otherwise force him into the

ditch. Such a conclusion is particularly unsupported by the present record in view of the fact that Wozniak never even attempted to look and see if the police were closing in dangerously; his statement that the police were closing in is based only on what he could hear.

18. Nor does Cavender and Siewert's knowledge of the existence of the drainage ditches, standing alone, alter the Court's conclusion. The mere fact that these defendants knew that Wozniak was approaching the ditches can not support the inference that Cavender and Siewert intended to force him into the ditch—particularly in the absence of any evidence that they took any steps to force Wozniak into the ditch.

48, 470 N.E.2d 302, 305–06 (1984), summary judgment in favor of the defendants must also be granted on count II.

### Wozniak's Municipal Liability Claim

■ Wozniak's municipal liability claim against the Village of Orland Park (count V) is based on allegations that "the Village of Orland Park permits and tolerates a pattern and practice of unjustified, unreasonable and excessive use of force by police officers. . . ." Compl. ¶ 5 (count V). However, plaintiffs have failed to come forward with any evidence of Orland Park's alleged pattern and practice of permitting unreasonable and excessive force. Indeed, plaintiffs' brief in response to defendants' motion for summary judgment is entirely silent on the issue of the Village's municipal liability. Thus, we conclude that plaintiffs have abandoned their municipal liability claim. Even if they have not abandoned the claim, summary judgment in favor of the Village must be granted in view of the total absence of evidence supporting plaintiffs' allegations that Orland Park maintains a pattern and practice of permitting unreasonable and excessive force. Accordingly, summary judgment in defendant's favor is granted with respect to count V as well as Karen Wozniak's derivative loss of consortium claim (count VI).

### Wozniak's Supplemental State Law Claims

Counts VII and IX of Wozniak's complaint state supplemental claims for assault and reckless operation of a motor vehicle, respectively. The other remaining counts are Karen Wozniak's derivative claims of loss of consortium (counts VIII and X). The defendants' motion for summary judgment on Wozniak's claims does not address their substantive merits; rather, the defendants argue that under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1–101 *et seq.*, they are immune from liability.

■ This Court need not reach either the issue of immunity or the merits of Wozniak's state-law claims. Having determined that defendants are entitled to summary judgment on both of Wozniak's federal claims—thus disposing of the federal bases of jurisdiction in this case, the Court shall decline to exercise its supplemental jurisdiction over these remaining state-law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *see also Estate of Warner v. U.S.,* 754 F.Supp. 1271, 1279–80 (N.D.Ill.1990) (following *Gibbs* and dismissing supplemental claims after granting summary judgment on federal claims arising out of an automobile accident following a high speed chase). The Court finds that the interests of comity are best served by allowing a state tribunal to rule on the merits of Wozniak's claims and address whether Cavender and Siewert's conduct can be considered "willful and wanton" under the Tort Immunity Act. Accordingly, we dismiss counts VII, VIII, IX, and X, without prejudice, for want of jurisdiction.

### CONCLUSION

In the final analysis, this case involves a regretable accident which perhaps could have been avoided by more restrained action by Officers Cavender and Siewert. The officers' response to Wozniak and Wilcox's decision to flee may have been ill-advised but did not violate Wozniak's civil rights under the circumstances of this case.

Defendants' motion for summary judgment is granted in part. Summary judgment is granted in favor of defendants on counts I, II, V, and VI. All remaining counts are dismissed without prejudice for lack of jurisdiction. This action is therefore dismissed in its entirety.