**Reggie THOMAS, Plaintiff,**

v.

**The CITY OF COLUMBUS, Willie Dozier, Chief of Police, Ralph Johnson, Sheriff of Muscogee County, Georgia, Rodney Spears, Individually, and John Doe, Individually, Defendants.**

No. 4:00–CV–205–3(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

March 4, 2002.

Jacqueline K. Taylor, Atlanta, GA, for plaintiff.

James C. Clark, Jr., James A. Balli, columbus, GA, Clifton Cartwright Fay, Columbus, GA, Eugene Hardwick Polleys, Jr., Columbus, GA, for City of Columbus, Willie Dozier, Ralph Johnson, defendants.

Frank K. Martin, Columbus, GA, Eugene Hardwick Polleys, Jr., Columbus, GA, for Rodney Spears, defendant.

Eugene Hardwick Polleys, Jr., Columbus, GA, for John Doe, defendant.

### ORDER

LAND, District Judge.

This case arises from a police chase that ended when Plaintiff was struck by the unmarked police vehicle that had been pursuing him. Plaintiff filed a five count complaint. In Count I Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S Constitution. In Count II Plaintiff asserts a claim pursuant to 42 U.S.C. § 1985, alleging that Defendants conspired to deprive Plaintiff of his constitutional right to equal protection and due process of law. In Count III Plaintiff asserts a claim for attorneys fees pursuant to 42 U.S.C. § 1988. In Counts IV and V Plaintiff asserts state law claims for intentional tort and negligence.

Defendants have moved for summary judgment contending that no genuine issue of material fact exists to be tried. They contend that the undisputed facts demonstrate that no constitutional violations occurred. Defendants also argue that even if a constitutional violation occurred, Plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact as to the essential elements of a § 1983 claim. Moreover, insofar as the individual Defendants are sued in their personal capacities, Defendants maintain that they are entitled to qualified immunity. For the reasons set forth below, the Court grants Defendants' motion for summary judgment.[1]

### BACKGROUND

On June 20, 2000, the Columbus, Georgia, Metro Narcotics Task Force received information from the owner of the Villager Motel that illegal drug activity was occurring in room 37 of his motel. Plaintiff, who was renting room 37, was identified as one of the suspects.[2] Defendant Rodney Spears, a detective with the Task Force,

---

**1.** The Court held a hearing on Defendants' motion on February 7, 2002. At the hearing Plaintiff's counsel acknowledged that Plaintiff has now focused his federal claims on alleged deprivations of his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment and his constitutional right to substantive due process under the Fourteenth Amendment. Plaintiff has essentially abandoned his claims under the Fifth and Sixth Amendments and his equal protection claim under the Fourteenth Amendment, having produced no evidence to support those claims. Therefore, the Court grants summary judgment in favor of Defen-

dants on Plaintiff's Fifth Amendment, Sixth Amendment, and Fourteenth Amendment equal protection claims, finding that no genuine issue of material fact exists to be tried regarding those claims, and that Defendants are entitled to judgment as a matter of law as to those claims. The Court addresses Plaintiff's Fourth Amendment and Fourteenth Amendment substantive due process claims in detail herein below.

**2.** Plaintiff had been sentenced to ten years in prison in another case and was to surrender for confinement on June 23, 2000.

and his partner, James Whitten (the "John Doe" Defendant in this case)[3], were dispatched to the Villager Motel for surveillance purposes. When they arrived in their unmarked vehicle, they observed Plaintiff, along with a white female and an African–American male, departing from room 37. Concerned that they had been spotted by Plaintiff, Spears and Whitten drove their vehicle away from Plaintiff's direction toward the exit of the motel driveway. Other members of the Task Force arrived on the scene. They had a photograph of the suspect and identified Plaintiff as the suspect identified by the owner of the motel. They attempted to stop Plaintiff. However, Plaintiff did not stop. Instead, Plaintiff fled in his vehicle, almost colliding with Spears's and Whitten's vehicle.[4]

As Plaintiff fled past Spears and Whitten, Plaintiff pulled out of the motel parking lot and into the public street at a high rate of speed. Spears and Whitten pursued him. Although Plaintiff recalls seeing no flashing light on the unmarked police vehicle, Spears and Whitten contend that they placed a flashing blue light on their unmarked vehicle while in pursuit. Plaintiff estimates his speed during the chase to be 40 miles per hour while Spears estimates that they reached speeds as high as 60 to 65 miles per hour. During the chase, Plaintiff was traveling at such a high rate of speed that when he attempted to make a right turn, his vehicle hit the median and struck another vehicle. After colliding with the other vehicle, Plaintiff continued to elude Spears and Whitten on foot. He ran into the Booker T. Washington Apartments complex.

Whitten got out of the car being driven by Spears and continued to chase Plaintiff on foot into the Booker T. Washington Apartments complex. Spears followed in the unmarked vehicle. Spears rode on the grass in between the housing units looking for Plaintiff, and Whitten who was in pursuit on foot. Spears estimates that he was traveling approximately 10 to 15 miles per hour. He found Plaintiff and Spears scuffling on the ground. He remained in his car. Plaintiff escaped from the scuffle, and according to Spears, ran away from Whitten holding his hands over his face, apparently having been "pepper sprayed" by Whitten during the scuffle.[5]

When Plaintiff ran from Whitten, Plaintiff was approximately 50 feet from Spears's vehicle and running directly toward it. Spears slowed his vehicle and attempted to veer away from Plaintiff to avoid hitting him. Plaintiff contends that he attempted to avoid the collision by veering away from the vehicle's path. Regrettably, Spears's and Plaintiff's evasive action resulted in them veering in the same direction. Spears's vehicle struck Plaintiff. Spears testified that the collision was an accident, and he did not intend to run Plaintiff over to subdue him. Plaintiff was apprehended near the point where he was struck by Spears's vehicle.

*SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

3. Although Plaintiff has not properly amended his complaint to substitute Officer Whitten for John Doe, John Doe shall be referred to herein as Officer Whitten.

4. Plaintiff contends that no law enforcement officer ever identified himself, and he thought he was being chased by white males who intended to harm him.

5. Curiously, Plaintiff denies "scuffling" with or being "pepper sprayed" by Whitten prior to being struck by the Spears vehicle.

(1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen*, 121 F.3d. at 646.

### LIABILITY UNDER 42 U.S.C. § 1983

Section 1983 provides a mechanism for seeking redress for alleged deprivations of federal constitutional and federal statutory rights by persons acting under color of state law. To establish a *prima facie* case, plaintiffs must prove two elements: (1) the action occurred "under color of law;" and (2) the action is a deprivation of a constitutional right or a federal statutory right. Defendants do not dispute that the actions complained of in this case occurred "under color of law." They contend, however, that there has been no deprivation of a constitutional right, and alternatively even if a deprivation has occurred, they have no § 1983 liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, applying the standard for summary judgment, the Court must inquire into the alleged constitutional violations and whether the elements for § 1983 liability are present in this case.

### Plaintiff's Alleged Constitutional Violations

The first step in any action under § 1983 is to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043, 1054 (1998). If no constitutional right has been violated, then Plaintiff has no § 1983 claim against the City or the individual Defendants.

In analyzing whether Plaintiff has presented sufficient evidence of a constitutional violation to avoid summary judgment, it must first be determined whether the incident in question implicates the Fourth Amendment's protections against unreasonable seizures or the Fourteenth Amendment's substantive due process protections. Different standards apply depending upon whether the case is evaluated under the Fourth Amendment or under the Fourteenth Amendment's substantive due process analysis.

 If the facts support a finding that a "seizure" occurred, then Plaintiff would be entitled to certain protections under the Fourth Amendment. Specifically, to determine whether one's Fourth Amendment right to be free from unreasonable seizures has been violated, the Court must evaluate whether the force used during the seizure was objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396–397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, if no arrest, investigatory stop, or other seizure occurred, the Fourth Amendment is not implicated, and Plaintiff's constitutional claims must be analyzed under Fourteenth Amendment substantive due process analysis. The standard applied to determine whether Plaintiff's substantive due process rights have been deprived is whether the officer's conduct "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

### a. Did a "Seizure" Occur Implicating the Fourth Amendment?

The Court finds that Plaintiff in the present case was injured prior to any arrest, investigatory stop, or seizure by Defendants. The undisputed evidence discloses that he was injured during the course of a pursuit. Consequently, the Fourth Amendment was not implicated until after he was injured. It is well settled that the Fourth Amendment covers only "searches and seizures." No one suggests that there was a search in this case, and Supreme Court precedent forecloses finding a seizure. As held by the Supreme Court, "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *Id.* at 844, 118 S.Ct. 1708, citing *California v. Hodari,* 499 U.S. 621, 626, 111 S.C. 1547, 113 L.Ed.2d 690 (1991). Furthermore, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement, nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement, but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 844, 118 S.Ct. 1708, quoting *Brower v. County of Inyo,* 489 U.S. 593, 596–597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *see also Jackson v. Sauls,* 206 F.3d 1156, 1166 (11th Cir.2000) ("It is only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.") As explained by the Supreme Court, "no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him." 523 U.S. at 844, 118 S.Ct. 1708.

■ The evidence in this case demonstrates that the police officers were pursuing Plaintiff. During that pursuit, they accidentally struck him with their vehicle. Even construing the evidence in favor of Plaintiff as required in deciding a motion for summary judgment, no reasonable juror could conclude that the police officer *intentionally* struck Plaintiff with his car to stop him. Any such finding would be the product of absolute speculation. The evidence yields but one reasonable conclusion—Spears's pursuit of Plaintiff and unintentional striking of him with the police car does not constitute a seizure for Fourth Amendment purposes. Therefore, since no seizure occurred, Plaintiff has no Fourth Amendment claim arising from being struck by Spears's vehicle.[6]

---

6. As noted previously, Plaintiff admits that no scuffle and no pepper spraying occurred prior to being hit by the Spears vehicle. Therefore, under his own testimony, there is no basis for Plaintiff to argue that a "seizure" occurred prior to him being struck by the Spears vehicle. However, even if we assumed *arguendo* that the scuffle between Plaintiff and Whitten prior to the collision occurred, as described by Spears, and that Plaintiff was "pepper sprayed" during the scuffle, that "stop" or "seizure" would be insufficient as a matter of law to constitute a violation of Plaintiff's Fourth Amendment rights. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (wherein the Court explained that the Fourth Amendment's guarantee that citizens have the right to be secure in their persons against unreasonable seizures of the person requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.")

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's cham-

*b. Plaintiff's Fourteenth Amendment Substantive Due Process Claim*

 The absence of a Fourth Amendment violation does not end the inquiry. The Court must next analyze whether Plaintiff can prevail on a Fourteenth Amendment substantive due process claim. The standard for a Fourteenth Amendment substantive due process violation is whether the conduct of the police officers "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). No evidence exists contradicting Spears's testimony that he struck Plaintiff unintentionally. Although one could argue that a genuine issue of material fact exists as to whether Spears was negligent or even reckless, it is mere speculation to suggest that he intentionally struck Plaintiff. The undisputed evidence is to the contrary. Although Plaintiff is entitled to have all reasonable inferences construed in his favor in opposing a motion for summary judgment, he must produce some evidence from which a reasonable jury could conclude that Spears *intended* to run him down or that Defendants' conduct "shocks the conscience." Plaintiff has failed to produce such evidence. Speculation and possibility are insufficient bases for avoiding summary judgment.

 As has been observed, "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving. A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." *County of Sacramento v. Lewis*, 523 U.S. at 853, 118 S.Ct. 1708. Accordingly, "high speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under section 1983." *Id.* at 854, 118 S.Ct. 1708.

No reasonable jury could conclude that either Spears's or Whitten's conduct in this case "shocks the conscience." Therefore, it cannot give rise to a violation of the Fourteenth Amendment. Accordingly, no § 1983 claim can be maintained, and summary judgment is appropriate.

*Additional Requirements for Municipal Liability Under § 1983*

Even if Plaintiff could establish a constitutional violation under either the Fourth or Fourteenth Amendments, Defendants would still be entitled to summary judgment because Plaintiff has failed as a matter of law to establish the additional elements of § 1983 liability for municipalities and because the individual Defendants are entitled to qualified immunity.

*a. Claims Against the City and Its Officials in Their Official Capacities[7]*

 It is well settled that municipali-

bers, violates the Fourth Amendment." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id* at 396–397, 109 S.Ct. 1865.

Insofar as Plaintiff maintains that the scuffle and pepper-spraying (which he denied even occurred in his deposition) rises to the level of a "seizure," the Court finds that the level of force used by officer Whitten was objectively reasonable in light of the facts and circumstances confronting him.

7. For purposes of § 1983 liability, claims against municipal officers and employees in their official capacities are treated as claims against the municipality or governmental unit for whom they were employed. *See Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *see also Kentucky v. Graham*, 473

ties are subject to the provisions of 42 U.S.C. § 1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, to prevail on a § 1983 claim against a municipality, the plaintiff must prove more than a deprivation of a constitutional right. Municipalities are not liable under *respondeat superior* theories for purposes of § 1983 liability. *Id.* Plaintiff must demonstrate a direct causal link between the municipality's deliberate conduct and the deprivation of Plaintiff's federal rights. To carry its burden, the plaintiff generally must establish that the deprivation was the result of a government policy, government custom or usage, and/or the government's failure to train, supervise or discipline its employees. *Id.*

 Plaintiff does not contend that the City had an *express policy* of engaging in unreasonable seizures under the Fourth Amendment or a policy of engaging in conduct that would violate Plaintiff's substantive due process rights. Moreover, no evidence has been presented to suggest that the City had a *custom or usage* that resulted in such constitutional deprivations. Plaintiff argues, however, that sufficient evidence exists from which a jury could conclude that Defendants failed to adequately train, supervise, and discipline its employees, and that this failure caused the deprivation of Plaintiff's constitutional rights. The only evidence that Plaintiff points to in support of this theory is testimony from Spears that he received no new training regarding the conducting of investigatory stops when he joined the Metro Drug Task Force. Spears did testify, however, that he received basic training on such matters as a police officer before

joining the Task Force. Furthermore, Plaintiff has produced no evidence to refute Defendant's evidence that all of its officers, including the two involved in this case, received training on investigatory stops and procedures designed to comply with the Fourth Amendment.

The Court finds that Plaintiff has failed to produce sufficient evidence from which a reasonable jury could conclude that any alleged failure by Defendants to supervise, train, and discipline their officers resulted in any deprivation of Plaintiff's constitutional rights. Therefore, even if Spears and Whitten committed a constitutional violation, the City, along with Defendants Dozier and Johnson, in their official capacities, are entitled to summary judgment.

*b. Claims Against the Individual Defendants in Their Personal Capacities*

Plaintiff also seeks damages against the individual Defendants in their personal capacities. As stated herein above, to prevail on any such claims, Plaintiff must first prove that these Defendants deprived him of some constitutional right, which, as the Court has found, Plaintiff cannot do. However, assuming *arguendo* that Defendants did violate Plaintiff's Fourth Amendment and/or Fourteenth Amendment rights, Plaintiff must show more than the existence of a constitutional violation to impose personal liability upon the individual Defendants.

 "Qualified immunity shields a § 1983 defendant from liability for harms arising from discretionary acts, as long as the discretionary acts do not violate clearly established federal statutory or constitu-

U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). For constitutional deprivation claims against government officials in their personal capacities, "qualified immunity shields a § 1983 defendant ... as long as [his] acts do

not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Jackson v. Sauls,* 206 F.3d 1156, 1164 (11th Cir.2000)

tional rights of which a reasonable person would have known." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir.2000). "For an asserted right to be clearly established for purposes of qualified immunity, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Id, quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified § immunity." *Jackson v. Sauls*, 206 F.3d at 1165 (11th Cir.2000). Specifically, regarding claims arising from alleged Fourth Amendment deprivations, the Eleventh Circuit has stated "a reasonable officer's awareness of the existence of an abstract right, such as a right to be free of excessive force or an investigatory stop without reasonable suspicion, does not equate to knowledge that his conduct infringes the right. If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.*

■ In this case, the undisputed evidence establishes that Spears and Whitten were in hot pursuit of Plaintiff, whom they had reason to believe had been engaged in illegal drug activity. The chase resulted in an attempt to pepper spray him to subdue him. After Plaintiff continued to elude police, the chase continued. It ended when Defendant Spears accidentally struck Plaintiff with his police vehicle. Under these factual circumstances, no reasonable jury could conclude that Defendants violated any clearly established constitutional rights of Plaintiff. Consequently, Defendants are entitled to qualified immunity, and summary judgment is appropriate in their favor.

*PLAINTIFF'S 42 U.S.C. § 1985 (CONSPIRACY) AND § 1988 (ATTORNEYS FEES) CLAIMS*

■ To prove a conspiracy claim pursuant to § 1985, Plaintiff must prove a constitutional deprivation. Having found no such deprivation in this case as a matter of law, the Court grants summary judgment in favor of Defendants on Plaintiff's § 1985 conspiracy claim.

■ Furthermore, since Plaintiff has not prevailed on his constitutional claims, Plaintiff's § 1988 claim for attorneys fees must likewise fail. Summary judgment is therefore granted to Defendants on this claim, also.

*PLAINTIFF'S STATE LAW CLAIMS*

■ Having granted summary judgment in favor of Defendants as to all of Plaintiff's federal law claims, the Court declines to exercise pendent or supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's state law claims are dismissed without prejudice.

*CONCLUSION*

For the reasons stated above, summary judgment is granted in favor of Defendants as to all federal law claims asserted by Plaintiff. In addition, Plaintiff's state law claims are dismissed without prejudice.

IT IS SO ORDERED.