BROWER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE
ESTATE OF CALDWELL (BROWER), ET AL. *v.*
COUNTY OF INYO ET AL.

No. 87–248.   Argued January 11, 1989—Decided March 21, 1989

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and KENNEDY, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, *post*, p. 600.

*Robert G. Gilmore* argued the cause for petitioners. With him on the briefs was *Craig A. Diamond*.

*Philip W. McDowell* argued the cause for respondents. With him on the brief was *Gregory L. James*.

JUSTICE SCALIA delivered the opinion of the Court.

On the night of October 23, 1984, William James Caldwell (Brower) was killed when the stolen car that he had been driving at high speeds for approximately 20 miles in an effort to elude pursuing police crashed into a police roadblock. His heirs, petitioners here, brought this action in Federal District Court under 42 U. S. C. § 1983, claiming, *inter alia*, that respondents used "brutal, excessive, unreasonable and unnecessary physical force" in establishing the roadblock, and thus effected an unreasonable seizure of Brower, in violation of the Fourth Amendment. Petitioners alleged that "under color of statutes, regulations, customs and usages," respondents (1) caused an 18-wheel tractor-trailer to be placed across both lanes of a two-lane highway in the path of Brower's flight, (2) "effectively concealed" this roadblock by placing it behind a curve and leaving it unilluminated, and (3) positioned a police car, with its headlights on, between Brower's oncoming vehicle and the truck, so that Brower would be "blinded" on his approach. App. 8–9. Petitioners further alleged that Brower's fatal collision with the truck was "a proximate result" of this official conduct. *Id.*, at 9. The District Court granted respondents' motion to dismiss the complaint for failure to state a claim on the ground (insofar as the Fourth Amendment claim was concerned) that "establishing a roadblock [was] not unreasonable under the circumstances." App. to Pet. for Cert. A–21. A divided panel of the Court of Appeals for the Ninth Circuit affirmed the dismissal of the Fourth Amendment claim on the basis that no "seizure" had occurred. 817 F. 2d 540, 545–546 (1987). We granted certiorari, 487 U. S. 1217 (1988), to resolve a conflict between that decision and the contrary hold-

ing of the Court of Appeals for the Fifth Circuit in *Jamieson* v. *Shaw*, 772 F. 2d 1205 (1985).

The Fourth Amendment to the Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

In *Tennessee* v. *Garner*, 471 U. S. 1 (1985), all Members of the Court agreed that a police officer's fatal shooting of a fleeing suspect constituted a Fourth Amendment "seizure." See *id.*, at 7; *id.*, at 25 (O'CONNOR, J., dissenting). We reasoned that "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." *Id.*, at 7. While acknowledging *Garner*, the Court of Appeals here concluded that no "seizure" occurred when Brower collided with the police roadblock because "[p]rior to his failure to stop voluntarily, his freedom of movement was never arrested or restrained" and because "[h]e had a number of opportunities to stop his automobile prior to the impact." 817 F. 2d, at 546. Essentially the same thing, however, could have been said in *Garner*. Brower's independent decision to continue the chase can no more eliminate respondents' responsibility for the termination of his movement effected by the roadblock than Garner's independent decision to flee eliminated the Memphis police officer's responsibility for the termination of his movement effected by the bullet.

The Court of Appeals was impelled to its result by consideration of what it described as the "analogous situation" of a police chase in which the suspect unexpectedly loses control of his car and crashes. See *Galas* v. *McKee*, 801 F. 2d 200, 202–203 (CA6 1986) (no seizure in such circumstances). We agree that no unconstitutional seizure occurs there, but not for a reason that has any application to the present case.

Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, see *Hill* v. *California*, 401 U. S. 797, 802–805 (1971); cf. *Maryland* v. *Garrison*, 480 U. S. 79, 85–89 (1987), but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act. The writs of assistance that were the principal grievance against which the Fourth Amendment was directed, see *Boyd* v. *United States*, 116 U. S. 616, 624–625 (1886); T. Cooley, Constitutional Limitations *301–*302, did not involve unintended consequences of government action. Nor did the general warrants issued by Lord Halifax in the 1760's, which produced "the first and only major litigation in the English courts in the field of search and seizure," T. Taylor, Two Studies in Constitutional Interpretation 26 (1969), including the case we have described as a "monument of English freedom" "undoubtedly familiar" to "every American statesman" at the time the Constitution was adopted, and considered to be "the true and ultimate expression of constitutional law," *Boyd, supra,* at 626 (discussing *Entick* v. *Carrington*, 19 How. St. Tr. 1029, 95 Eng. Rep. 807 (K. B. 1765)). In sum, the Fourth Amendment addresses "misuse of power," *Byars* v. *United States*, 273 U. S. 28, 33 (1927), not the accidental effects of otherwise lawful government conduct.

Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an

individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.* That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals. The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

This analysis is reflected by our decision in *Hester* v. *United States*, 265 U. S. 57 (1924), where an armed revenue agent had pursued the defendant and his accomplice after seeing them obtain containers thought to be filled with "moonshine whisky." During their flight they dropped the containers, which the agent recovered. The defendant sought to suppress testimony concerning the containers' contents as the product of an unlawful seizure. Justice Holmes, speaking for a unanimous Court, concluded: "The defendant's own acts, and those of his associates, disclosed the jug, the jar and the bottle—and there was no seizure in the sense of the law when the officers examined the contents of each after they had been abandoned." *Id.*, at 58. Thus, even though the incriminating containers were unquestionably taken into possession as a result (in the broad sense) of action by the police, the Court held that no seizure had taken place. It would have been quite different, of course, if the revenue agent had shouted, "Stop and give us those bottles, in the name of the law!" and the defendant and his accomplice had complied. Then the taking of possession would have been

not merely the result of government action but the result of the very means (the show of authority) that the government selected, and a Fourth Amendment seizure would have occurred.

In applying these principles to the dismissal of petitioners' Fourth Amendment complaint for failure to state a claim, we can sustain the District Court's action only if, taking the allegations of the complaint in the light most favorable to petitioners, see *Scheuer* v. *Rhodes*, 416 U. S. 232, 236 (1974), we nonetheless conclude that they could prove no set of facts entitling them to relief for a "seizure." See *Conley* v. *Gibson*, 355 U. S. 41, 45–46 (1957). Petitioners have alleged the establishment of a roadblock crossing both lanes of the highway. In marked contrast to a police car pursuing with flashing lights, or to a policeman in the road signaling an oncoming car to halt, see *Kibbe* v. *Springfield*, 777 F. 2d 801, 802–803 (CA1 1985), cert. dism'd, 480 U. S. 257 (1987), a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur. It may well be that respondents here preferred, and indeed earnestly hoped, that Brower would stop on his own, without striking the barrier, but we do not think it practicable to conduct such an inquiry into subjective intent. See *United States* v. *Leon*, 468 U. S. 897, 922, n. 23 (1984); see also *Anderson* v. *Creighton*, 483 U. S. 635, 641 (1987); *Harlow* v. *Fitzgerald*, 457 U. S. 800, 815–819 (1982). Nor do we think it possible, in determining whether there has been a seizure in a case such as this, to distinguish between a roadblock that is designed to give the oncoming driver the option of a voluntary stop (*e. g.*, one at the end of a long straightaway), and a roadblock that is designed precisely to produce a collision (*e. g.*, one located just around a bend). In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been

stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough here, therefore, that, according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

This is not to say that the precise character of the roadblock is irrelevant to further issues in this case. "Seizure" alone is not enough for § 1983 liability; the seizure must be "unreasonable." Petitioners can claim the right to recover for Brower's death only because the unreasonableness they allege consists precisely of setting up the roadblock in such manner as to be likely to kill him. This should be contrasted with the situation that would obtain if the sole claim of unreasonableness were that there was no probable cause for the stop. In that case, if Brower had had the opportunity to stop voluntarily at the roadblock, but had negligently or intentionally driven into it, then, because of lack of proximate causality, respondents, though responsible for depriving him of his freedom of movement, would not be liable for his death. See *Martinez* v. *California*, 444 U. S. 277, 285 (1980); *Cameron* v. *Pontiac*, 813 F. 2d 782, 786 (CA6 1987). Thus, the circumstances of this roadblock, including the allegation that headlights were used to blind the oncoming driver, may yet determine the outcome of this case.

The complaint here sufficiently alleges that respondents, under color of law, sought to stop Brower by means of a roadblock and succeeded in doing so. That is enough to constitute a "seizure" within the meaning of the Fourth Amendment. Accordingly, we reverse the judgment of the Court of Appeals and remand for consideration of whether the District Court properly dismissed the Fourth Amendment claim

on the basis that the alleged roadblock did not effect a seizure that was "unreasonable."

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, concurring in the judgment.

The Court is unquestionably correct in concluding that respondents' use of a roadblock to stop Brower's car constituted a seizure within the meaning of the Fourth Amendment. I therefore concur in its judgment. I do not, however, join its opinion because its dicta seem designed to decide a number of cases not before the Court and to establish the proposition that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Ante*, at 596.

The intentional acquisition of physical control of something is no doubt a characteristic of the typical seizure, but I am not entirely sure that it is an essential element of every seizure or that this formulation is particularly helpful in deciding close cases. The Court suggests that the test it articulates does not turn on the subjective intent of the officer. *Ante*, at 598. This, of course, not only comports with the recent trend in our cases, see, *e. g.*, *Harlow* v. *Fitzgerald*, 457 U. S. 800, 815–819 (1982); *United States* v. *Mendenhall*, 446 U. S. 544, 554, n. 6 (1980) (opinion of Stewart, J.), but also makes perfect sense. No one would suggest that the Fourth Amendment provides no protection against a police officer who is too drunk to act intentionally, yet who appears in uniform brandishing a weapon in a threatening manner. Alternatively, however, the concept of objective intent, at least in the vast majority of cases, adds little to the well-established rule that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.*, at 554

(opinion of Stewart, J.); see also *INS* v. *Delgado*, 466 U. S. 210, 215 (1984).

There may be a case that someday comes before this Court in which the concept of intent is useful in applying the Fourth Amendment. What is extraordinary about the Court's discussion of the intent requirement in this case is that there is no dispute that the roadblock was intended to stop the decedent. Decision in the case before us is thus not advanced by pursuing a hypothetical inquiry concerning whether an unintentional act might also violate the Fourth Amendment. Rather, as explained in Judge Pregerson's dissent in the Court of Appeals, this case is plainly controlled by our decision in *Tennessee* v. *Garner*, 471 U. S. 1 (1985). 817 F. 2d 540, 548 (CA9 1987) (opinion concurring in part and dissenting in part). In that case, we held that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." 471 U. S., at 7. Because it was undisputed that the police officer acted intentionally, we did not discuss the hypothetical case of an unintentional seizure. I would exercise the same restraint here.

I am in full accord with Judge Pregerson's dissenting opinion, and, for the reasons stated in his opinion, I join the Court's judgment.