165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Darrin POWELL, Plaintiff-Appellant,
v.
Tony MAYHEW, Defendant-Appellee.
 No. 97-3642.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 19, 1998.*
Decided Dec. 3, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Evansville Division. No. EV 96-136-C H/H. David F. Hamilton, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. JOEL M. FLAUM, Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Darrin Powell appeals the district court's grant of summary judgment in his 42 U.S.C. § 1983 case Powell claims that Officer Tony Mayhew used excessive force to seize him when Mayhew shot him as he ran away from another officer The district court held that Mayhew had not used excessive force, and even if he had done so qualified immunity protected him. Because Powell cannot show that there is a genuine issue of material fact as to whether Mayhew used excessive force, we affirm
 
 
 2
 On July 3, 1994, shortly before 10 00 P. M., the Evansville Police Department issued a radio dispatch to all units to look for Darrin Powell, who was identified as a possible suspect in a shooting The dispatch indicated that Powell had fled the scene of the shooting in a yellow Cutlass or Monte Carlo and provided Powell's address and license plate number. Officer Tony Mayhew received the dispatch and drove to Powell's residence to see if Powell had returned home. Mayhew did not see Powell's car when he arrived, so he backed his car into the partially obscured driveway of a neighboring house. Around the same time, Officer Kent Walker, driving in his marked car, spotted a yellow Monte Carlo and began to follow it. He saw that the license plate matched the one provided by the dispatcher, so he activated his lights. Powell increased his speed and tried to escape. With Walker in pursuit, Powell sped at 50 to 60 miles per hour down side streets, ignoring stop signs
 
 
 3
 A few minutes later, Powell and Walker arrived at Powell's residence. Mayhew saw the two cars coming toward the house. Walker radioed that he was in an emergency pursuit. Powell drove his car into the yard of a nearby house He dodged trees, but crashed his car into the garage in back of his house. When Powell's car approached the house, Mayhew was standing nearby. Walker stopped his car behind Powell's, then got out of his car with his gun drawn. Walker saw that Powell had exited his car, but that a passenger remained inside in the car with his hands on his head. Walker shouted at Powell to get on the ground, but he did not warn that he would shoot if Powell failed to comply
 
 
 4
 Powell looked at Walker, hesitated, then ran away toward the southwest corner of the garage Mayhew was about ten feet from the southwest corner of the garage around the corner from where Powell was Mayhew had his gun in one hand and a flashlight in the other. Mayhew heard Walker order Powell to the ground, and then suddenly Powell rounded the corner of the house and ran toward Mayhew Mayhew shot Powell once in the chest. Powell's momentum carried him into Mayhew, knocking Mayhew down as Powell fell.
 
 II Analysis
 
 5
 We review a grant of summary judgment de novo. See Schaeffer v. Goch, 153 F.3d 793, 795 (7th Cir.1998) Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c)
 
 
 6
 A claim of excessive force arising out of a search or seizure implicates the Fourth Amendment, while other claims of excessive force implicate substantive due process. See County of Sacramento v. Lewis, 118 S Ct 1708, 1714-16 (1998). A seizure occurs when a governmental agent intentionally restricts a citizen's freedom of movement. See id. at 1715 (quoting Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989)). Mayhew shot Powell to stop his approach, and therefore Powell's claim is correctly characterized as subject to scrutiny under the Fourth Amendment.
 
 
 7
 The Fourth Amendment commands that seizures be "reasonable." In general, when determining whether the force used to effect a seizure is reasonable, we must look at the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Specifically, the Court has held that the use of deadly force against a fleeing felony suspect does not violate the Fourth Amendment if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). The Court has stated that this standard is met when "there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm ... and if, where feasible, some warning has been given." Id. at 11-12. In determining whether the seizure is reasonable, we must give due regard to the "split-second judgments" that police officers effecting a seizure must make. See Graham, 490 U.S. at 397.
 
 
 8
 Powell argues that Officer Mayhew did not have probable cause to believe that the person he shot was Powell, that Powell had committed a crime or that Powell posed an immediate threat. These claims all fail as a matter of law. As to the claim that Mayhew did not have probable cause to believe that Powell committed the shooting, Powell misapprehends the nature of the probable cause inquiry under these facts. Mayhew heard Powell identified as a "possible suspect" in a shooting on his police radio, and then in the next few minutes identifying information was broadcast The issue is not whether Mayhew had probable cause to believe that Powell had committed a crime, but rather it is whether the officers who issued the radio bulletin had probable cause to believe that Powell had committed the shooting. See United States v. Hensley, 469 U.S. 221, 230-31 (1985), Whiteley v. Warden, 401 U.S. 560, 568 (1971); Tangwall v. Stuckey, 135 F.3d 510, 517 (7th Cir.1998) Powell argues that because the dispatcher described him as only a "possible suspect," there was uncertainty about the identity of the suspect. This is not so. The radio traffic also indicated that the license plate of the car the suspect used to escape checked out to Powell as well Moreover, the officer at the shooting scene radioed that a witness had confirmed that the address the dispatcher gave out as Powell's was a good address. Collectively, the police had reason to believe that Powell had committed a crime. See Tangwall, 135 F.3d at 517.
 
 
 9
 Powell's next argument is that Mayhew could not have had probable cause to believe that the person he shot was Powell. This argument collapses into the argument that Mayhew did not have probable cause to believe that the person he shot at was an immediate threat, and turns on what Mayhew knew at the time he shot Powell See Graham, 490 U.S. at 396-97. Mayhew heard the dispatch about a shooting and proceeded to the address of the suspect. While waiting, he saw a car matching the color of the suspect's speed down the street, drive through neighbors' yards and crash into a garage in back of the house. Mayhew saw that this car was being chased by a fellow officer, he had also heard Walker radio that he was pursuing the suspect's vehicle. From around the corner of the house, Mayhew heard Walker order someone to the ground multiple times, and then, a person running from the crash site ran directly toward him around the corner of the house.
 
 
 10
 Even if Mayhew did not know that this person was Powell, we cannot say that Mayhew was unreasonable to have believed that this person posed a threat to him. Powell does not challenge Mayhew's version of the shooting in any material way. The incident happened at night, and the area around Mayhew was very dark. Mayhew was only about ten feet from the corner of the house when Powell appeared in front of him. Powell was moving so quickly and was so close to Mayhew that, as Powell fell after the shooting, he knocked Mayhew over. Mayhew did not know if the person in front of him was armed or not, but he did know that the person was fleeing a car belonging to a suspect in an attempted murder. Powell may not have intended to cause any harm to Mayhew, but Mayhew did not have any time to ascertain this. Mayhew had only seconds to react. Had he not shot at Powell, he would have put his own life at risk, something the Fourth Amendment does not require of officers. Under the circumstances, a warning was not feasible and Mayhew was not under an obligation to try to use nondeadly force first. See Plakas v. Drinski, 19 F.3d 1143, 1148 (7th Cir.1994).
 
 
 11
 Because we hold that there was no constitutional violation, we need not reach the qualified immunity question. We AFFIRM the judgment of the district court.
 
 
 
 *
 In his principal brief, Powell waived oral argument. Consequently, this appeal is heard on the briefs and the record. See Fed. R.App. P. 34(f); Cir R. 34(f)