Jameel F. KALIMAH, et al., Plaintiff(s),

v.

CITY OF McKINNEY, TEXAS, et al., Defendant(s).

Civil No. 2:02–CV–22 (TJW).

United States District Court, E.D. Texas, Marshall Division.

Aug. 2, 2002.

Edwin Wright, III, Rowe Jack Ayres, Jr., Scott Douglas & McConnico, LLP, Austin, TX, Carl R. Roth, Michael Charles Smith, Law Office of Carl R. Roth, Marshall, TX, for plaintiffs.

Charles Homer Clark, Clark Lea Rutter & Logsdon, Tyler, TX, Joe C. Tooley, Rockwall, TX, for City of MCKinney, defendant.

Barry Abrams, Ramon Gustave Viada, III, Abrams Scott & Bickley, Houston, TX, for Joyce Vandertuin, defendant.

Kyle L. Potts, Robert E. Couhig, Jr., Adams & Reese, New Orleans, LA, Alex E. Cosculluela, Charles Fremont Jones, Adams & Reese, Houston, TX, for ADT Security Services, Inc., defendant.

## ORDER

WARD, District Judge.

Before the Court is Defendant Joyce VanDertuin's Motion for Summary Judgment (# 46). Having considered the motion, Plaintiffs' response, and the applicable law, the Court DENIES Defendant's motion with respect to Plaintiffs' Fourth Amendment seizure claim, Fourteenth Amendment excessive force claim, and state law claims for assault, battery, and negligence as genuine issues of material fact preclude summary judgment. The Court GRANTS Defendant's motion with respect to Plaintiffs' unlawful search and trespass claims.

**Background**

This civil rights action arises from the death of Cathey Jo Howard Kalimah who

was shot and killed in her own home by McKinney police officer Joyce VanDertuin. The central question in this case is whether the shooting was intentional or accidental.

On June 5, 2001, Officer VanDertuin responded to a burglar alarm at the Kalimah residence reported by ADT Security Systems, Inc. ("ADT"). After contacting the police, ADT telephoned James Kalimah, the decedents husband, and requested he meet the police at the home. Mr. Kalimah telephoned his wife, who was closer to the home, and asked that she meet the police.

Officer VanDertuin arrived at the Kalimah home and commenced checking the outside of the residence. Officer VanDertuin found the rear patio door of the home unlocked and radioed for backup. At some point either before or after Officer VanDertuin's arrival, Mrs. Kalimah arrived and entered the house through the garage. Mrs. Kalimah then approached the rear patio door. Around the same time, Officer VanDertuin also approached the rear patio door and fired a single shot from her Glock 40 caliber sidearm through the solid portion of the glass centered patio door just above the door knob and dead bolt. The bullet penetrated the door and struck Mrs. Kalimah in the upper right chest. Officer VanDertuin then opened the door, observed Mrs. Kalimah, and radioed for an ambulance. Mrs. Kalimah died shortly thereafter.

## Discussion

Plaintiffs, as representatives of the estate of Mrs. Kalimah, brings this suit under 42 U.S.C. § 1983, alleging the Defendants violated Mrs. Kalimah's Fourth and Fourteenth Amendment rights by employing excessive force. Plaintiffs also assert a Fourth Amendment violation based upon a subsequent search of the Kalimah home and various state law causes of action for assault, battery, trespass, and negligence.

Officer VanDertuin moves for summary judgment on Plaintiffs' claims asserting qualified immunity.

### A. Standard of Review.

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P.56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in any case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party moving for summary judgment bears the initial burden of identifying those portions of the summary judgment evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has satisfied this burden, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file set forth specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. Qualified Immunity.

A private right of action exists against police officers who, acting under color of state law, violate federal constitutional or statutory rights. 42 U.S.C. § 1983. The defense of qualified immunity, however, protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In considering the merits of a qualified immunity defense in excessive force cases, courts previously considered whether the right was clearly established and, if so, whether, in light of such clearly established law, a reasonable officer could have known that his or her conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001)(citing *Graham v. Connor* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001). However, the Supreme Court recently revisited the above analysis, clarifying the sequence of inquiries for qualified immunity cases. *Saucier*, 121 S.Ct. at 2158.

After *Saucier*, a qualified immunity analysis must begin with this threshold question: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right? *Id.* at 2156; *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001). If no constitutional right was violated, the court need not inquire further. *Saucier*, 121 S.Ct. at 2156. If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 2158–59. *Saucier's* qualified immunity inquiry, requiring courts to focus first on the underlying constitutional issue, is intended to assist courts in disposing of insubstantial suits at an early stage of litigation, and to encourage courts to "set forth principles which will become the basis for a holding that a right is clearly established." *Id.* at 2156; *Jackson*, 268 F.3d at 651.

### 1. Officer VanDertuin's conduct violated a constitutional right.

█ In this case, viewed in the light most favorable to Plaintiffs, the evidence establishes a violation of a constitutional right. Based on the summary judgment evidence, a reasonable inference exists that Officer VanDertuin intentionally shot Mrs. Kalimah despite the fact that deadly force was not justified under the circumstances. Accordingly, Plaintiffs have created a genuine issue of material fact concerning whether an unlawful seizure occurred, making summary judgment is inappropriate.

### a. Fourth Amendment "Seizures."

A "seizure" occurs when government actors have, "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, as the Supreme Court explained in *Brower v. Inyo*

*County,* "[a][v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful. This is implicit in the word 'seizure' which can hardly be applied to an unknowing act." 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Thus, a seizure may only be affected by a volitional act, not an accident. *See id.* at 598–99, 109 S.Ct. 1378, *see also Campbell v. White,* 916 F.2d 421, 423 (7th Cir.1990)(holding accidental striking of suspect with patrol car not a means intentionally applied to effect a stop so not a seizure).

### b.    *The competing facts.*

Here, Defendant submits the testimony of Officer VanDertuin, a crime scene investigator, and two expert witnesses in support of her position that the shooting was accidental. According to Officer VanDertuin, after discovering the unsecured rear patio door and radioing for backup, she heard a thump sound from inside the residence. VanDertuin then re-approached the patio door. As she neared the door, she heard what she believed to be a hand slap the door, slamming it shut. She then drew her sidearm with her right hand and grabbed the door knob with her left in an attempt to open the door. As she attempted to shove the door open, it was pushed back by an opposing force. At that instant, VanDertuin felt what she believed to be the door make contact with the barrel of her weapon and heard a loud boom. Realizing that she had fired her weapon and hearing someone from inside the house, VanDertuin states she opened the door and for the first time saw Mrs. Kalimah.

In support of her rendition of the facts, VanDertuin presents the expert testimony of Dr. Roger M. Enoka. Enoka describes a muscle reflex phenomenon he terms sympathetic contraction. According to Enoka, this muscle reflex often occurs in one hand when the other hand quickly grasps or encounters a sudden force. Thus, Enoka opines that when VanDertuin's left hand encountered a sudden resistance while pushing on the door knob, her right hand inadvertently flexed in response, discharging her weapon.

Plaintiffs' rely on inconsistencies in the physical evidence from the scene, witness statements, and expert testimony to create a genuine fact issue on whether the shooting was intentional.[1] First, Plaintiffs point to the fact that although VanDertuin claims the door struck the barrel of her gun, the physical evidence does not support this assertion. Laboratory analysis of the gun and the door show no signs of contact. Furthermore, forensic reports state the gun was at least three, and up to twelve, inches away from the door at the time the shot was fired.

Next, Plaintiffs present the affidavit of Regyna Howard, Mrs. Kalimah's daughter. Regyna Howard testifies that the blinds on the glass centered patio door through which Mrs. Kalimah was shot, and on all other windows in the kitchen and breakfast room were open when they left the home that day. This testimony controverts Officer VanDertuin's statements that she only saw Mrs. Kalimah after the shot was fired and she opened the door. Various witnesses in the area also state that Officer VanDetertuin drew her weapon immediately upon exiting her patrol car at the Kalimah residence. One witness also

---

1.    By separate order, the Court granted Defendant's motion to strike the affidavit of Tom Bevel (Exh. 3), the affidavit of Darrell Joy (Exh. 31), and a handwritten report of a Captain Dean (Exh. 25). Accordingly, the Court did not consider this evidence in making its summary judgment determination.

states that Officer VanDertuin arrived at the scene after Mrs. Kalimah. While these statements do not directly deal with the shooting, they do create issues of credibility.

Plaintiffs, additionally, offer the testimony of Paul Jannuzzo, chief operating officer and general counsel of Glock, Inc. Mr. Jannuzzo testifies regarding the trigger pressure required to overcome a Glock pistol's three internal safeties and states that a Glock pistol will not fire if an object is in contact with the muzzle absent a separate trigger pull after the contact is separated.

Finally, Plaintiffs point to inconsistencies in Officer VanDertuin's various statements concerning the shooting. These inconsistencies raise credibility considerations that Plaintiffs are entitled to have a jury decide. For as the Fifth Circuit indicated in *Bazan v. Hidalgo County, et al.*, the award of summary judgment to the defense in a deadly force case should be made with particular care where the officer defendant is the only witness left alive to testify. 246 F.3d 481, 492 (5th Cir.2001).

Under these facts a jury could reasonably infer that Officer VanDertuin overreacted to what she thought was a suspect on the other side of the patio door by intentionally firing on Mrs. Kalimah in violation of the Fourth Amendment.

### 2. Officer VanDertuin could not have reasonably believed that her conduct did not violate a clearly established constitutional right.

■ "A police officer may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). Defendant, appropriately, does not argue that she reasonably believed shooting an unarmed woman through the patio door of her own home did not violate a clearly established constitutional right.

Accordingly, the Court denies Defendant's summary judgment motion with respect to Plaintiffs' Fourth Amendment seizure claim.

### 3. Plaintiffs Fourteenth Amendment Excessive Force Claim.

■ Defendant also moves for summary judgment on Plaintiffs' substantive due process excessive force claims. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(discussing substantive due process excessive force claims). However, the same evidence which, viewed in the light most favorable to the Plaintiffs, supports a reasonable inference that Officer VanDertuin's actions were intentional, also supports a reasonable inference that, even if unintentional, VanDertuin's actions demonstrate sufficient culpability to violate due process. *See id.* at 848–51, 118 S.Ct. 1708 (discussing the sliding-scale of culpability required to show a substantive due process violation). Accordingly, Defendant's motion for summary judgment on Plaintiffs' Fourteenth Amendment claim is also denied.

### 4. Plaintiffs' Unlawful Search Claims.

■ Plaintiffs also assert claims against Officer VanDertuin stemming from a subsequent search, pursuant to a warrant, of the Kalimah residence. Plaintiffs claim that Officer VanDertuin violated the Fourth and Fourteenth Amendment by entering the Kalimah home, and allowing other "unauthorized" third parties to enter the home, on June 14, 2001. Even taken as true, Plaintiffs' allegations fail to state a constitutional violation.

In *Wilson v. Layne* the Supreme Court explained that while every police action

inside a home need not be explicitly authorized by the text of a warrant, the Fourth Amendment does require police actions in execution of a warrant to be related to the objectives of the authorized intrusion. 526 U.S. 603, 611, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Here, Detective Diana Hale of the McKinney Police Department obtained a warrant to enter the Kalimah residence and retrieve certain physical evidence believed related to the shooting. In the affidavit submitted to secure the warrant, Officer Hale specifically requested permission to document Officer VanDertuin's movements before, during, after the shooting and requested permission for Officer VanDertuin to accompany and show her where she was throughout the incident. In light of this specific request and the nature of the investigation authorized by the warrant, the presence of Officer VanDertuin and third parties to assist in the investigation was sufficiently related to the objectives of the authorized intrusion to satisfy the Fourth Amendment. Thus, the Court grants Defendant's summary judgment motion with respect to this claim.

For these same reasons, the Court also grants Defendant summary judgment on Plaintiffs' state law trespass claim.

5. *Plaintiffs' State Law Claims for Assault, Battery, and Negligence.*

■ The genuine issues of material fact which preclude summary judgment with respect to Plaintiffs' Fourth Amendment seizure claim also preclude summary judgment with respect to Plaintiffs' remaining state law claims against Officer VanDertuin. Thus, the Court denies Defendant's summary judgment motion on Plaintiffs' state law claims of assault, battery, and negligence.

**Conclusion**

For the reasons set forth above, Defendant's Motion for Summary Judgment is DENIED with respect to Plaintiffs' Fourth Amendment seizure claim, Fourteenth Amendment excessive force claim, and state law claims for assault, battery, and negligence. The Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiffs' unlawful search and trespass claims.

ORDERED and SIGNED this 2nd day of August, 2002.