Filed 11/26/13  In re Pedro B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re PEDRO B., a Person Coming Under the Juvenile Court Law. | D063071 |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Plaintiff and Respondent, | (Super. Ct. No. J227568) |
| v. | |
| PEDRO B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed as modified with directions.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

Pedro B. appeals from a juvenile court's true finding that he possessed a billy club in violation of Penal Code section 22210. He contends he was detained and searched in violation of the Fourth Amendment, and accordingly the juvenile court erred in denying his motion to suppress the evidence obtained in that search. He further contends the court failed to declare whether the offense was a felony or a misdemeanor as required by statute, and did not calculate the number of predisposition custody credits to which he is entitled. We modify the judgment to specify that Pedro is entitled to 30 days' predisposition custody credits. As so modified, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2012, San Diego police officers Keelan McCullough and Levi Merriman responded to a radio call of a pending fight between about 10 males at an elementary school. As the officers drove to the area, the police dispatcher informed them that the males had dispersed down an alley adjacent to the school. Some of the males traveled on foot, while others rode bicycles.

As the officers neared the elementary school, they saw three males on a sidewalk approximately one block from the school, traveling in the direction that the dispatcher had indicated. One male was riding a bicycle, while the other two were moving "quickly" on foot. Intending to detain the males to investigate a possible fight, the officers blocked the males' path with their patrol car and exited the car. Officer Merriman ordered Pedro, who was on foot, to "stop." Ignoring the order, Pedro continued to walk in the same direction he had been going. However, because the officers' patrol car blocked Pedro's path, Pedro walked around the car and into the street

2

as he asked, "What for?"  As he did so, Pedro, in one motion, stared at Officer Merriman, turned so that the right side of his body was no longer visible to the officer, moved his right hand toward his right pocket, and began to lift the portion of his shirt that covered his right pocket.

Based on his training and experience, Officer Merriman believed Pedro's movements indicated the intent to discard contraband or a weapon.[1]  Officer Merriman quickly repositioned himself so he could see Pedro's right hand and blocked Pedro's path as he did so.  Officer Merriman saw an exposed metal object as Pedro lifted his shirt, grabbed Pedro's right hand before he could reach the object, and removed it from Pedro's pocket.  The object was a 10-inch hollow metal pipe that appeared to be part of a bicycle seat.

On November 5, 2012, the People filed a petition against Pedro under Welfare and Institutions Code section 602, alleging that Pedro unlawfully possessed a billy club and should be continued as a ward of the juvenile court.[2]  After denying Pedro's motion to

---

[1]    Officer Merriman testified he had seen people "removing a weapon or discarding contraband [¶] . . . [¶] . . . well above 50 to 100 times" during the more than three years he spent in the mid-city division of the San Diego police department.  He testified that in his experience, a person's lifting of his or her shirt and looking at the officer was often the "first maneuver" that preceded reaching into a pocket when he or she possessed a weapon or contraband that he or she did not want to possess when contacted by the police.

[2]    All statutory references are to the Welfare and Institutions Code unless otherwise specified.  Pedro was first adjudged a ward of the juvenile court on February 24, 2011, for misdemeanor resisting or obstructing a peace officer and for misdemeanor possession or transfer of a switchblade knife.  He was continued a ward of the court on May 30, 2012, for felony possession of a dirk or dagger.  He was on probation at the time of the instant offense.

3

suppress, the court sustained the petition; continued Pedro as a ward of the court; stated the offense was a felony; and ordered him placed in Camp Barrett for a period not to exceed 365 days.

DISCUSSION

## I. *Denial of the Suppression Motion*

Challenging the court's denial of his suppression motion, Pedro argues Officer Merriman seized him without the requisite reasonable suspicion necessary to justify the investigatory stop. He further asserts the "plain view" exception to the Fourth Amendment did not apply because Officer Merriman would not have seen the billy club but for the unlawful detention.

### A. *Applicable Law*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133-1134.)

"Any police restraint of the liberty of an individual either by physical force or by an assertion of authority to which the individual submits, in circumstances in which a reasonable person would have believed he or she was not free to leave, will constitute a state 'seizure' of the individual within the meaning of the Fourth Amendment." (*People v. Soun* (1995) 34 Cal.App.4th 1499, 1515.) A Fourth Amendment seizure occurs only

4

when an officer intentionally applies hands-on, physical restraint to a suspect (*California v. Hodari D.* (1991) 499 U.S. 621, 626; *Brower v. County of Inyo* (1989) 489 U.S. 593, 596-597), or initiates a show of authority to which a reasonable, innocent person would feel compelled to submit (*Florida v. Bostick* (1991) 501 U.S. 429, 434, 438) and to which the suspect actually does submit (*Brendlin v. California* (2007) 551 U.S. 249, 254; *California v. Hodari D., supra*, 499 U.S. at p. 626). "Such a seizure is normally characterized as either a 'detention' or an 'arrest.' " (*Soun, supra*, 34 Cal.App.4th at p. 1515.)

For a detention to be lawful, "the circumstances known or apparent to the officer must include specific and articulable facts [which would cause the officer] to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person [the officer] intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) "[T]he reasonable suspicion standard . . . is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.) This approach allows officers to draw on their own training and experience in deciding whether criminal activity is afoot. (*United States v. Arvizu* (2002) 534 U.S. 266, 273.) The detention is valid so long as the officer can " ' "provide some objective manifestation that the person detained may be involved in criminal activity." ' " (*Letner*, *supra*, at p. 145.)

## B. *The Detention*

We first determine at what point Pedro was detained for Fourth Amendment purposes. Pedro argues he was detained at the moment Officer Merriman blocked his path with the patrol car and ordered him to stop. However, a seizure did not occur at that moment because Pedro was not physically restrained and did not submit to Officer Merriman's display of authority. (*California v. Hodari D.*, *supra*, 499 U.S. at p. 626; *Brendlin v. California*, *supra*, 551 U.S. at p. 254.) Rather than submit to Officer Merriman's authority, Pedro continued walking and circumvented the patrol car that blocked his path. Officer Merriman detained Pedro the moment the officer repositioned his body and blocked Pedro's path so that he could see the movements Pedro was making with his hidden right hand. At that moment, although the officer did not physically arrest Pedro's movement, his physical presence in Pedro's path stopped Pedro from continuing to walk away.

## C. *Reasonable Suspicion*

Pedro contends Officer Merriman lacked reasonable suspicion to stop him. He argues the officer did not articulate facts which caused him to believe a crime had occurred, was occurring, or was about to occur. Pedro also argues he was simply a pedestrian, and the officer lacked a reasonable basis to believe he was associated with the reported pending fight. We first determine whether some objective manifestation existed that Pedro and his two companions were the subjects of the radio call. We then determine whether the officers had an articulable basis to believe a crime had occurred, was occurring, or was about to occur.

6

First, the officers had sufficient basis to believe that the three males they stopped were connected to the pending fight at the elementary school. The males matched the general description in the radio call (i.e., males leaving the area of an elementary school on bicycle or on foot), were stopped a short distance from the school, were stopped shortly after the pending fight was reported, and were "quickly" traveling away from the nearby scene. In light of these facts, the officers could temporarily detain the males to determine whether they were in fact the males who had gathered to fight at the elementary school. Although Pedro argues that he was simply a pedestrian in the area, the Supreme Court has long held that potentially innocent explanations for persons' conduct do not divest officers of the ability to initiate temporary investigative stops. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125-126; *People v. Letner and Tobin*, *supra*, 50 Cal.4th at pp. 146-147.)

Next, the record supports the court's finding that "some activity relating to crime has taken place or is occurring or about to occur." (*In re Tony C., supra*, 21 Cal.3d at p. 893.) Prior to contacting Pedro, Officer Merriman had been informed of a pending fight at the nearby elementary school. Fighting is a crime under California law (Pen. Code, § 415, subd. (1)), and persons gathering to fight may also be involved in other criminal activities associated with fighting. Moreover, Pedro's actions after the initial contact supplied Officer Merriman an additional basis to detain him. In response to Officer Merriman's order to stop, Pedro initiated a series of evasive movements that in the officer's training and experience indicated possession of a weapon or contraband. (See generally, *Illinois v. Wardlow, supra*, 528 U.S. at p. 124 ["[N]ervous, evasive

7

behavior is a pertinent factor in determining reasonable suspicion."].)  Although Pedro argues that "[t]he fact that [he] reached into his pocket and turned his body away from Officer Merriman is insignificant," the court could reasonably conclude these actions were highly significant based on Officer Merriman's testimony that they suggest a person is armed or carrying contraband.

Pedro's contention that the officer lacked reasonable suspicion because a fight never *actually* took place is based on an unduly narrow view of police investigatory authority.  Police officers may detain persons in order to investigate "criminal activity" even though the officer has not identified a specific criminal statute the person has actually violated before the stop.  (See *Illinois v. Wardlow, supra*, 528 U.S. at p. 124.)  In *Wardlow*, the Supreme Court upheld the detention of a person who immediately fled from officers as they drove into an area known for narcotics activity.  (*Ibid.*)  After the officers detained the person, they discovered a handgun.  (*Id.*at p. 122.)  The officers had not received a radio call about any particular person, had not witnessed Wardlow engage in any identifiable criminal activity, and had not identified any specific criminal statute he had violated.  (See *id.* at p. 124.)  The lack of a specific criminal statute notwithstanding, the Supreme Court held the officers could detain Wardlow to investigate "criminal activity" on the basis of his unprovoked headlong flight from them in a high crime area.  (*Id.* at pp. 124-125 ["In this case . . . it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police. . . .  We conclude [the officer] was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in

8

investigating further."].)  In other words, Wardlow's behavior raised suspicion that he may be involved in some sort of criminal activity, and officers may temporarily detain such persons—even without knowledge of a completed crime—to determine what type of criminal activity, if any, is afoot.

Here, as in *Wardlow*, although Officer Merriman did not identify a specific criminal statute he could charge Pedro with at the time of the detention, he was justified in stopping Pedro to further investigate his involvement in criminal activity, given that the officer had sufficient basis to suspect Pedro was connected to the pending fight at the elementary school.  At the moment Officer Merriman detained Pedro, the officer had reasonable basis to detain him to investigate criminal activity related to a possible fight and possible possession of a weapon or contraband.  Accordingly, neither Officer Merriman's detention of Pedro nor the subsequent discovery of the billy club ran afoul of the Fourth Amendment.  The court did not err in denying Pedro's motion to suppress.

## II. *Designation of the Offense as a Felony*

Pedro next contends the juvenile court erred because it did not fulfill its statutorily-mandated duty to consider and declare whether the offense of possession of a billy club was a misdemeanor or a felony.

Possessing a billy club is a "wobbler," in that it may be punished as either a misdemeanor or a felony.  (Pen. Code, § 22210.)  Section 702 requires:  "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

9

Here, the court stated:  "[T]he overall term that [Pedro] now is exposed to is four years, two months [as a] result of the true finding on Count 1.  And *I am fixing this as a felony at this time*."  (Italics added.)  The court's statement that it was "fixing" the offense as a "felony at this time" reflects that it consciously elected a felony classification.  We presume the court knows and follows the law.  (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)  This presumption, combined with the court's clear statement that it was selecting a felony classification, suffices to show the court complied with its obligation to decide whether the offense was a felony or misdemeanor.

### III.  *Predisposition Custody Credits*

Pedro contends the court did not calculate the predisposition custody credits to which he is entitled, and the case should be remanded for this purpose.  Pedro and the People agree that he is entitled to 30 days' predisposition credits; accordingly we may correct the error without a remand.  (See *People v. Engquist* (1990) 218 Cal.App.3d 228, 233.)  We modify the judgment to state that Pedro is entitled to 30 days' predisposition custody credits.

10

DISPOSITION

The judgment is modified to state that Pedro is entitled to 30 days' predisposition custody credits.  As so modified, the judgment is affirmed.  The juvenile court shall forward a copy of the modified judgment to the proper authorities.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.

11