WIGGINS, Justice
(dissenting).
As the majority acknowledges, the federal standard that determines whether the search of the equipment bag violated the Fourth Amendment is the one set forth in New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) and Safford Unified School District No. 1 v. Redding, 557 U.S. 364, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009). For evidence obtained by public school officials to be admissible under the Fourth Amendment, the search or seizure by which'1 it was obtained must have been “justified at its inception” because the officials had “reasonable grounds” to suspect it would produce evidence of violations of the law or school rules. T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 742-43, 83 L.Ed.2d at 734-35 (quoting Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)). More specifically, before initiating the search or seizure, officials must have had sufficient reliable knowledge to support a reasonable belief they had a “moderate chance” of discovering evidence of wrongdoing. Redding, 557 U.S. at 370-71, 129 S.Ct. at 2639, 174 L.Ed.2d at 361-62. When school officials claim a search or seizure was justified based on individualized suspicion of a particular student, the court must assess, whether they had sufficient reliable information to support such a belief concerning the particular student before the search or seizure occurred. Id. at 373-74, 129 S.Ct. at 2641, 174 L.Ed.2d at 363.
In holding the search and seizure of Lindsey’s equipment bag was justified at its inception, the majority concludes school officials were justified in believing they had a moderate chance of discovering evidence of wrongdoing inside it based on just two facts. First, the superintendent knew Lindsey had a history of drug and gun infractions. Second, after being badly injured during a football game, Lindsey repeatedly requested that the superintendent give his equipment bag to one of his friends oh the team and not to let anyone else mess with it as he was being prepped for transport via ambulance.[10]
In my view, the majority fixates on Lindsey’s past .to incorrectly conclude this reasonably innocuous conduct was actually suspicious conduct. Consequently, the majority concludes reasonably innocuous conduct created the reasonable ¡suspicion necessary to justify the search and seizure of the bag under T.L.O. and Redding. In contrast, for the following reasons, I believe school officials had inadequate reasonably reliable information to believe they had a moderate chance of finding evidence of wrongdoing inside the equipment bag at the moment they seized it.
First, the majority asserts the request Lindsey made to the superintendent was “truly odd” in light of his serious injury and not merely “a mildly suspicious comment with lots' of alternative innocüous *430 explanations.” I disagree with this assessment. Nothing about the request Lindsey made or the manner in which he made it amounted to “suspicious conduct” under the circumstances.'
As the Supreme Court has recognized, “schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items ... onto school grounds.” T.L.O., 469 U.S, at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. This legitimate need is in no way diminished when students participate in school activities on school grounds. In that context, students may need, to transport “not only the supplies needed for their studies, ... keys, money, and the necessaries of personal hygiene and grooming,” but also “articles of property needed in connection with extracurricular or recreational activities.” See id, Along with such necessary items, students may have perfectly legitimate reasons to carry with them “nondis-ruptive yet highly personal items as photographs, letters', and diaries.” Id.
In today’s, world, ! would add cellphones, tablets, and laptops' to the list of -items students may legitimately carry on school grounds. Among high schoolers : today, cell phones are particularly ubiquitous. Cf. Riley v. California, 573-U.S. -,-, 134 S.Ct. 2473, 2490, 189 L.Ed.2d 430, 447 (2014), As .the Supreme Court has noted, cell phones ordinarily contain “vast quantities of personal information.” Id, at —, 134 S.Ct. at 2485, 189 L.Ed.2d at 442. Thus, many high schoolers ordinarily keep on their person or among their belongings on school -grounds “a digital record of nearly every aspect of their lives — from the mundane to the intimate.” Id. at-, 134 S.Ct. at 2490, 189 L.Ed.2d.at 447.
I think the majority-is incorrect to assert that Lindsey asking the superintendent to give his equipment bag to his friend and make sure nothing happened to it amounted to “suspicious conduct.” This is- particularly true in light of the fact that Lindsey had placed his backpack in his equipment bag at least for the duration of the football game. Quite simply, it appears that everything Lindsey had with him — -his backpack, schoolbooks, homework, clothes, shoes, wallet, cash, keys, cellphone, etc. — -was in his equipment bag when he was injured. Accordingly, in my ■viewit would have been odd if Lindsey had not -been concerned about what would happen to his equipment bag upon learning he had- been -potentially- severely injured and was- being transported to the hospital. Whatever the equipment bag contained, it would have been perfectly natural for any high school student in his situation to want to ensure it was shielded from theft or intrusion' and safely returned. Even setting aside the potentially vast-quantity of personal information the equipment bag may have contained, its contents were.also likely worth a great deal of money, particularly in the eyes of a high schooler. . -
, Additionally, upon assessing the injury Lindsey suffered 'during the football game, the ambulance attendants placed Lindsey into a cervical collar and onto a backboard to prevent his further injury. Thus, it was hardly “suspicious conduct” suggestive of wrongdoing for Lindsey to repeat his request that his equipment bag be given to his friend or fail to appreciate the potential seriousness of his injury. Given the nature of his probable injury and the context in which it occurred,[11] school officials reasonably should have understood it was un *431 likely Lindsey was thinking clearly before he was transported to the hospital. -
In short, Lindsey máking the statements he made under the circumstances in which he made them did not amount to “suspicious conduct.”- Therefore, I conclude school officials lacked any reliable basis upon which to form a reasonable suspicion. that Lindsey was engaged in wrongdoing before he was loaded into the ambulance.
Because the statements Lindsey m’áde before he was loaded onto the ambulance could not reasonably have been perceived to be suspicious under the circumstances, the only basis school officials had for suspecting he might have been engaged in wrongdoing while he was being cared for on the field was his past conduct. ■ Standing alone, this was insufficient to justify a reasonable belief that officials .had a .“moderate chance” of discovering evidence of wrongdoing inside his equipment bag. And at bottom, Lindsey’s history is really all the majority relies upon to find reasonable suspicion existed in this case.. The majority opinion all but, admits that, were it not for his past suspension for drug activity and past firearm charges, school officials would not have reasonably seen a yellow flag or a red flag when Lindsey sought to ensure his equipment bag was delivered to his friend. In the majority’s view, merely because he had been in trouble before, Lindsey’s being, concerned about what happened to his belongings somehow indicated there was a “fair chance that 'this troubled youth had drugs or guns in the equipment bag.”
Second, the majority supplies no adequate basis for its conclusion the affirmative requests Lindsey made were not an assertion of his constitutional right to be free from unreasonable searches and seizures without a warrant. There can be no denying Lindsey had an absolute right to assert his constitutional right to be free from an unreasonable search or seizure of his equipment bag without a warrant until school officials actually had reasonable suspicion to search or seize it. Lindsey had the ability to affirmatively assert that right at least until reasonably reliable information indicated school officials had a moderate chance of discovering evidence he was engaged in wrongdoing, even if he ultimately perceived a threat to his privacy at the hands of > school officials only after being injured on the football field. Yet the majority suggests the validity of any assertion of that right Lindsey might have attempted to make turns on whether school officials “caused” him to make it by affirmatively threatening to invade his privacy. I believe the majority is incorrect to distinguish the requests Lindsey made from an assertion of a constitutional right on the ground that he “volunteered” them. -
Instead of engaging with the content of the statements Lindsey made, the majority places too great an emphasis on the context in which he made them. On, the content front, the majority analysis is thin. The majority asserts what Lindsey said did not amount to an assertion of a constitutional right in part because his statements “were not designed to prevent officials from taking action, but were instead an affirmative request that officials hand over his bag. to a specific student.” But-if the statements Lindsey made were not designed to prevent officials from searching his equipment bag, .why were they so suspicious? And when Lindsey instructed school officials as to what he wanted' done with his equipment bag, by implication did he not also instruct them as to what he did not want done with it? .The majority simply fails to explain what distinguishes the “affirmative request” Lindsey repeatedly made from an effective assertion of his constitutional right not to have school offi *432 cials search or seize his equipment bag without a warrant.
Two potentially troubling implications follow from the majority analysis. First, the majority opinion suggests a student may invoke the right to be free from unreasonable warrantless searches and seizures only after school officials explicitly threaten to invade his or her privacy. Second, the majority opinion suggests that for a student to effectively assert the right to be free from unreasonable warrantless searches and seizures against school officials, only an explicit assertion expressed in precise terms will do.
The majority implicitly acknowledges that, if the statements Lindsey made amounted to an assertion of a constitutional right, the search was unconstitutional. As the majority opinion recognizes,
There are many reasons why a student might assert these rights, other than an attempt to prevent disclosure of evidence that one has violated a proscribed activity. A student cannot be penalized for demanding respect for his or her constitutional rights.
In re William G., 40 Cal.3d 550, 221 Cal.Rptr. 118, 709 P.2d 1287, 1297-98 (1985) (en banc). Nonetheless, the majority declines to provide any meaningful guidance as to just how explicit an assertion of the right to be free from unreasonable searches and seizures must be in order to be effective in this context. In contrast, in In re Warren G., the California Supreme Court concluded that right to be adequately invoked whenever a student attempts to shield a private possession from school officials:
If a student’s limited right of privacy is to have any meaning, his attempt to exercise that right — by shielding a private possession from a school official’s view — cannot in itself trigger a “reasonable suspicion.” A contrary conclusion would lead to the anomalous result that a student would retain a right of privacy only in those matters that he willingly reveals to school officials.
Id. Thus, if Lindsey instructed school officials to give the equipment bag to his friend because he desired to shield it from them, he arguably asserted his constitutional right to be free from unreasonable searches and seizures without a warrant.
Because I part ways with the majority on the question of whether the statements Lindsey made could have created reasonable suspicion in the minds of school officials who knew about his past conduct, I need not delve further into the question of whether his statements amounted to an assertion of his right to be free from unreasonable searches or seizures without a warrant. That is because school officials seized the equipment bag when they declined to heed Lindsey’s requests that it be given to his trusted friend and teammate.
When the head coach carried the equipment bag onto the bus back tó Dunkerton and placed it onto the seat next to his wife, knowingly disregarding the requests Lindsey made, the bag was unquestionably seized within the meaning of the Fourth Amendment. “A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.” Brower v. County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628, 635 (1989) (emphasis added) (citations omitted). In this case, the facts clearly indicate the coach willfully grabbed the equipment bag and withheld it from the person Lindsey intended it to be entrusted to because the superintendent asked him to. Indeed, there is no question the coach knew Lindsey did not want him to transport the equipment bag back to Dunkerton himself, as he personally heard Lindsey ask that it be given to his friend instead.
*433 As a result, by the time the superintendent heard the metallic sound coming from within the equipment bag in the lunchroom back in Dunkerton, the bag had already been seized within the meaning of the Fourth Amendment. It therefore makes no difference whether the superintendent reasonably believed the sound he heard .was created by a firearm coming into contact with the floor through the fabric of the bag or not. Because the seizure of the equipment bag was not adequately justified at the moment of its inception, the ensuing search of the bag was unreasonable within the meaning of the Fourth Amendment, and the fruits of that search should have been suppressed. I would therefore reverse the judgment of conviction and remand for a new trial.

. Despite the quotes used in the majority and concurring opinions, the superintendent testified that he did not. remember the statements Lindsey made well enough to quote them. When asked what the gist of the state-mente Lindsey made was, he replied: "It was just like I said, please make sure that Keota gets my bag. Please make sure that nobody else gets my bag.”

. Football is a contact sport widely acknowledged to be associated with concussions and head-injuries.