**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0899n.06
Filed: December 15, 2006

**No. 05-4577**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| **WILLIE J. HALSELL, et al.** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiffs-Appellants,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| **ANTHONY ETTER, et al.** | ) | |
| | ) | **O P I N I O N** |
| *Defendants-Appellees.* | ) | |

BEFORE:    KEITH, COLE, Circuit Judges; and STEEH, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**  Plaintiffs-Appellants Willie Halsell, Aaron Johnson, Keithen Jones, Reuben Mundy, and Basil Lewis (the "Plaintiffs") appeal the grant of summary judgment in favor of Defendants-Appellees Officers Antonio Etter, Charles Zopfi, and Dean Chatman (the "Officers"). The Plaintiffs brought suit under 42 U.S.C. § 1983 against the Officers, asserting a violation of the Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. The district court granted summary judgment for the Officers, concluding that the Officers were entitled to qualified immunity. The court held that (1) there was no violation of the Plaintiffs' constitutional rights because the Officers' conduct was reasonable, and (2) the Plaintiffs did not establish that the Officers violated a clearly established constitutional right of which a

_____

[*] The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

reasonable person would have known. For the following reasons, we **AFFIRM** the district court's grant of summary judgment for the Officers.

## I. FACTS

On May 1, 2003, Officers Antonio Etter and Charles Zopfi of the Cincinnati Police Department were dispatched to investigate a shooting at or near 1111 Elm Street. Their affidavits state that when they arrived at the scene "a number of citizens [were] pointing in a northeasterly direction stating that the suspect who committed the shooting ran toward West 12th Street." The officers headed towards West 12th Street and testified that upon arriving "several citizens told [them] that the shooting suspect ran into a barbershop."

Before entering the barbershop, Officer Zopfi requested assistance from other officers. Both Etter and Zopfi testified that a request for backup was consistent with police procedure for the Cincinnati Police Department. In response to Officer Zopfi's request, Officer Dean Chatman arrived at the barbershop.

Basil Lewis (a barber) exited the barbershop after seeing police officers gathered outside and before any officer entered the barbershop. Lewis testified that he saw the police, went outside, and heard a voice on a police radio say "the suspect is wearing a white tee shirt." At the time, Lewis was wearing a white t-shirt. Lewis testified that an officer "pointed a gun" at him and "barked" at him to put his hands against the car parked at the curb. Lewis replied that he "would do no such thing."

Only Officers Zopfi and Chatman entered the barbershop. The two officers testified that they entered with their "weapons pointed at the low-ready position." Plaintiffs Mundy, Johnson, and Halsell (who were inside the barbershop) all testified that officers entered the barbershop "guns

drawn, with their arms extended and slanting down toward the floor." Officers Zopfi and Chatman explained that they were trained to enter a building with their weapon drawn in the "low-ready position" if they were facing a "potentially dangerous situation."

The officers further testified that as they "approached the rear of the barbershop, a man matching the general description of the person [they] were searching for exited from a bathroom." A brief investigation revealed that the individual arrested by Officer Chatman was not the suspect wanted for the shooting on Elm Street. None of the Plaintiffs were arrested or detained beyond the time it took the Officers to search the premises.

Reuben Mundy (the owner of the barbershop), Willie Halsell (a customer of the barbershop), and Aaron Johnson (a barber) were inside the barbershop when Officers Chatman and Zopfi entered. Mundy testified that when the officers "burst into the front door of the shop," they were yelling "where is he, where is he?" According to Mundy, the officers, once inside, "raised their guns to upper body level and began pointing the guns from person to person, so that everyone in the shop except [Mundy] had a gun pointed directly at his person at least once." Halsell and Johnson's testimony corroborated Mundy's description. Further, Mundy, Halsell, and Johnson all testified that as a result of having a gun pointed at them they were "severely frightened."

Betty Kelow, a resident of an apartment located above the barbershop, testified that she "noticed a man in a white tee shirt running past the building" before the officers arrived at the barbershop. According to Kelow, she "went out the door aqnd [sic] saw the man turning into the alley at the east end of the barbershop building, running fast." Kelow testified that she went to see where the man went and saw him "run to the end of the alley and jump over the fence in the back

of the building." Kelow further said that she tried to inform the officers of the direction in which she saw the man run but that the officers "didn't want to hear from [her] and just told [her] to clear the area, get out of the way, etc." Kelow's additional testimony also supports (1) Lewis's statements that the police pointed a gun at him and asked him to lean against a car, and (2) the testimony of Mundy, Johnson, and Halsell that the officers entered the barbershop with their weapons drawn.

The Plaintiffs brought a claim under 42 U.S.C. § 1983 against the Officers, in their individual capacities, alleging that the Officers violated the Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. The Officers moved for summary judgment, arguing that they were entitled to qualified immunity. The district court entered summary judgment in favor of the Officers, concluding that (1) there were no genuine issues of material fact; (2) there was no constitutional violation because, although the plaintiffs were seized, the seizure was not unreasonable; and (3) the Officers were entitled to qualified immunity because raising their guns in the Plaintiffs' direction did not violate a clearly established constitutional right of which a reasonable person would have known. The Plaintiffs also brought a Fourteenth Amendment claim that the district court dismissed. The court explained that "reliance upon the Due Process Clause is misplaced in this context because it is the Fourth Amendment that establishes protections in the criminal justice system." *Halsell v. Etter*, No. 1:04cv63, 2005 U.S. Dist. LEXIS 26067, at *9-10 (S.D. Oh. Oct. 31, 2005).

## II. STANDARD OF REVIEW

A grant of summary judgment by a district court is reviewed by this Court de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This burden is satisfied "by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). "The mere existence of a scintilla of evidence" that supports the non-moving party's claims is insufficient to defeat summary judgment. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

Further, this Court must review de novo the grant of summary judgment on grounds of qualified immunity because application of the qualified-immunity doctrine is a question of law. *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996). If there are disagreements about the facts, this Court "must review the evidence in the light most favorable to the Plaintiffs, taking all inferences in their favor." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

## III. DISCUSSION

Qualified immunity is an affirmative defense for government officials performing discretionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). These "government officials . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* This Court applies a two-step analysis to determine whether a police officer is entitled to qualified immunity: "(1) whether, considering the allegations in a light most favorable to the party

injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). The Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), explained that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."

Once the Officers raise a qualified-immunity defense, the burden of demonstrating that they are not entitled to qualified immunity is on the Plaintiffs. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The Plaintiffs can meet this burden by showing that the Officers' conduct violated a right "so clearly established that a reasonable [officer] in [their] position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

There are two groups of plaintiffs to consider in this case. First, there is the group that was inside the barbershop when the Officers entered (Plaintiffs Halsell, Johnson, Jones, and Mundy) and second, there is Plaintiff Lewis who was outside the barbershop during the incident. We first address the seizure of the Plaintiffs inside the barbershop and then address the seizure of Plaintiff Lewis.

    1.    <u>Plaintiffs Halsell, Johnson, Jones, and Mundy: Constitutional Violation</u>

        *(a) Plaintiffs Halsell, Johnson, Jones, and Mundy were seized by the Officers*

The first step in determining whether an officer is entitled to qualified immunity focuses on whether a constitutional right has been violated, considering the evidence in the light most favorable to the injured party. *Estate of Carter*, 408 F.3d at 310-11. To establish a Fourth Amendment violation in a § 1983 action, the Plaintiffs must show that they were seized by the Officers and that

the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("Seizure alone

is not enough for § 1983 liability; the seizure must be "unreasonable.") (internal quotations omitted).

The Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), defined what

constitutes a seizure:

> [A] person has been 'seized' within the meaning of the Fourth Amendment only if,
> in view of all of the circumstances surrounding the incident, a reasonable person
> would have believed that he was not free to leave. Examples of circumstances that
> might indicate a seizure, even where the person did not attempt to leave, would be
> the threatening presence of several officers, the display of a weapon by an officer, .
> . . or the use of language or tone of voice indicating that compliance with the
> officer's request might be compelled.

(footnote omitted). This Court in *United States v. Rose*, 889 F.2d 1490, 1493 (6th Cir. 1989),

explained that "[w]hat constitutes a restraint on liberty prompting a person to conclude that he is not

free to leave will vary with the police conduct at issue and the setting in which the conduct

occurred." Further, behavior that is "coercive or intimidating" supports an inference that compliance

is demanded. *Cassady v. Tackett*, 938 F.2d 693, 696 (6th Cir. 1991).

The district court correctly concluded that the Officers' conduct in this situation constituted

a seizure of the Plaintiffs. According to the district court, "[b]y entering the barbershop, yelling with

guns draw [sic], the officers exhibited coercive or intimidating behavior." *Halsell*, 2005 U.S. Dist.

LEXIS 26067, at *11. Given the manner in which the Officers entered the barbershop, the Plaintiffs'

belief that they were not free to leave was reasonable.

According to the Officers, the Plaintiffs were not seized because "[a] necessary display of

force by a police officer does not seize every individual inadvertently in the presence of that display

of force." (Appellee's Br. 9-10.) Under this view, an individual is seized only when the government

official purposely directs his or her conduct at that individual. The Officers cite *McCoy v. City of Monticello*, 342 F.3d 842 (8th Cir. 2003), for the proposition that the McCoys were seized by police officers because the officers *directed* their conduct, "through means intentionally applied," at the McCoys. (Appellee's Br. 9.) In this case, however, the Officers argue that the Plaintiffs were merely bystanders, who suffered the "accidental effects" of the Officers' actions.

In *McCoy*, two police officers attempted to stop the McCoys after noticing that they were driving erratically. The police officers stopped in front of the McCoys' vehicle, causing the McCoys to swerve and land in a ditch. Mr. McCoy exited the truck with his hands in the air. The two officers approached the McCoys' car with their arms extended and holding their handguns. One of the officers started to run, but he slipped and his gun accidently discharged, injuring Mr. McCoy. 342 F.3d at 845-46.

The Supreme Court has not placed such a restriction on what constitutes a seizure of an individual. Any conduct by an officer that would lead a reasonable person to believe that he or she was not free to ignore the officer's request and thus was not free to leave, whether that conduct was directed at the individual or not, is enough to constitute a seizure. *See Mendenhall*, 446 U.S. at 554. Additionally, the Officers' reliance on *McCoy* is misplaced. *McCoy* merely distinguishes between an intentional seizure and an accidental seizure. The Eighth Circuit in *McCoy* stated that to violate the Fourth Amendment, the seizure must be intentional and not accidental because the Fourth Amendment addresses only intentional conduct and not acts of negligence. 342 F.3d at 847.

In the present case, the Officers intended to enter the barbershop and intended to detain the Plaintiffs inside while they looked for the shooting suspect. That the Plaintiffs were inside the

barbershop at the time of the search does not make the Officers' conduct any less intentional. Further, the Officers entered with their weapons drawn and, while scanning the barbershop for the suspect, pointed their weapons at the Plaintiffs. Given the circumstances, the district court correctly determined that a reasonable individual would not feel free to leave. Accordingly, the district court correctly concluded that the Plaintiffs were seized by the Officers.

> *(b)* *The Seizure of Plaintiffs Halsell, Johnson, Jones, and Mundy was Reasonable*

To constitute a Fourth Amendment violation the seizure must also be unreasonable. *Brower*, 489 U.S. at 599. To determine whether a seizure is reasonable under the Fourth Amendment, a court must apply an objective test. This Court looks to "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Scott v. United States*, 436 U.S. 128, 137 (1978) (explaining that a court must "make an objective assessment of an officer's actions in light of the facts and circumstances then known to [the officer]"). Further, not only must this Court judge an officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," this Court must also make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396-97. In determining whether the display of a weapon by an officer was reasonable, a court should look to whether "the surrounding circumstances give rise to a justifiable fear for personal safety." *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986).

The district court concluded that the Officers' conduct did not constitute an unreasonable

seizure. The court explained that after looking at the totality of the circumstances, the Officers' conduct was not unreasonable because "it was reasonable for [the Officers] to believe that they were entering into a dangerous situation and needed to protect themselves." *Halsell*, 2005 U.S. Dist. LEXIS 26067, at *14.

The Plaintiffs argue that the Officers' conduct was not reasonable because Kelow's affidavit states that she tried to tell the Officers that the suspect ran down an alley on the east end of the barbershop, rather than into the barbershop. The Plaintiffs also argue that the district court erred in not giving full credit to Kelow's affidavit. The Plaintiffs are correct that in determining whether the Officers' conduct amounted to a Fourth Amendment violation, the evidence must be construed in the light most favorable to the Plaintiffs. *See, e.g.*, *Bennett v. City of Eastpointe*, 410 F.3d 810, 823 (6th Cir. 2005) (noting that a court must look at the evidence in the light most favorable to the plaintiff to determine whether the plaintiffs demonstrated a Fourth Amendment violation). With regards to the Kelow affidavit, the district court stated as follows:

> While Plaintiffs would have the Court read the Kelow Affidavit as evidence that Defendants were not informed by citizens in the area that their suspect had run into the barbershop[,] Kelow merely states that she attempted to tell the officers that she saw a man run down the alley.

*Halsell*, 2005 U.S. Dist. LEXIS 26067, at *14 n.6. In analyzing the affidavits submitted by the parties, the Court must take what Kelow said as true. We must accept that she indeed "tried to tell the officers that [she] saw the man run" into the alley and not the barbershop. Contrary to the Plaintiffs' argument, however, we are not required to completely disregard the affidavits of the police officers in considering whether their conduct was reasonable.

Even taking into account Kelow's testimony in the light most favorable to the Plaintiffs, the Officers' conduct was not unreasonable in light of the circumstances. The Officers were in pursuit of a fleeing suspect who was armed and, in all likelihood, dangerous. The Officers were told by bystanders, other than Kelow, that the suspect ran into the barbershop. It was not unreasonable for the Officers to act on the statements of some bystanders and not others. Alternatively, the Officers could have decided to enter the barbershop first and then investigate the alley. Lastly, the Officers could have seen Ms. Kelow and concluded that her statements were not trustworthy. Whatever their thought process, it was not unreasonable for the Officers to enter the barbershop to look for the fleeing suspect.

Additionally, entering the barbershop with their weapons drawn was not objectively unreasonable. First, the Officers' conduct was in compliance with Cincinnati Police Department procedure. According to Officer Janke, "[i]t was appropriate for tactical and safety reasons for the [O]fficers to have their firearms in hand, out of their holsters." Officer Janke also testified that a "momentary raising of the firearms as the [O]fficers scanned the immediate area searching for armed subjects would be reasonable." Second, as the Supreme Court explained in *Graham*, this Court must examine the Officers' actions in light of the circumstances, "rather than with the 20/20 vision of hindsight." 490 U.S. at 396. Although the Officers ultimately found no suspect inside, they acted reasonably when, at the time, they believed that the suspect could be inside. Lastly, the Officers were not required to put their personal safety in harms' way by entering the barbershop without having their weapons ready. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 26-27 (1968) (explaining that police officers are not required to take unnecessary risks while performing their duties).

Momentarily pointing their weapons in the direction of the Plaintiffs, while scanning the interior of the barbershop, was not unreasonable given the possibility that an armed and dangerous suspect was inside. Therefore, the district court correctly concluded that, although the Officers seized the Plaintiffs, there was no constitutional violation because the Officers' conduct was reasonable in light of the circumstances.

The Officers are therefore entitled to qualified immunity and the district court properly granted summary judgment in their favor. Further, there is no need for this Court to determine whether the alleged violation involved a clearly established constitutional right, because the Officers' actions did not amount to a constitutional violation. *Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

2.      Plaintiff Lewis: Constitutional Violation

*(a) Plaintiff Lewis was seized by the Officers*

The district court also concluded that Plaintiff Lewis was seized when the police officer outside the barbershop pointed a gun at him and asked him to stand with his hands on the car. The court reasoned that despite Lewis's statement that he told the officers "that he would not comply, . . . a reasonable person in the circumstances would not believe that he was free to ignore the officer's requests." *Halsell*, 2005 U.S. Dist. LEXIS 26067, at *11-12. The district court's conclusion is correct. Although the Officers argue that the Plaintiffs were free to leave at any time because their "authority was directed at the possible presence of a suspect in the shooting" and not at the Plaintiffs, the Plaintiffs were nevertheless seized once they felt they were not free to leave.

Therefore, for the reasons previously discussed, the district court correctly determined that Plaintiff Lewis was seized.

      *(b)     The Seizure of Plaintiff Lewis was Reasonable*

The Plaintiffs did not argue in the district court that the seizure of Lewis was unreasonable. The Plaintiffs have the burden of setting forth specific facts indicating that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Because the Plaintiffs did not meet their burden, the district court properly granted summary judgment for the Officers on this point.

## IV. CONCLUSION

For the preceding reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Officers Etter, Zopfi, and Chatman.