**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0079n.06

Case No. 15-2456

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 27, 2017

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| STEVEN EDWIN WOODWARD, | ) | |
|  | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| RAYMOND D'ONOFRIO, Officer, | ) | MICHIGAN |
|  | ) | |
| Defendant-Appellant. | ) | |

BEFORE: COLE, Chief Judge; COOK and WHITE, Circuit Judges.

COOK, Circuit Judge. A brief chase between a police officer in a car and a cyclist ended in a collision just inside a parking lot. The cyclist sued under 42 U.S.C. § 1983, claiming the police officer intentionally rammed the vehicle into him. After the district court denied the officer's motion for summary judgment raising qualified immunity, the officer filed this interlocutory appeal. Because we lack jurisdiction, we DISMISS the appeal.

**I.**

Before the chase began, Steven Woodward saw his uncle dial 911 to report him for wielding a baseball bat during their fight. Scrambling to avoid the police, Woodward exited through the backdoor. Within minutes, Officer Michael Kasdorf of the Hazel Park Police Department arrived and, upon spotting Woodward fleeing on a bike, ordered him to stop.

Woodward instead pedaled away as Kasdorf chased him on foot. Kasdorf could not keep up, but he spotted Officer Raymond D'Onofrio in a black Dodge Charger at the next intersection. Kasdorf radioed D'Onofrio, warning him that Woodward, likely with a bat still in hand, was riding south and passing through the crosswalk in front of him.

D'Onofrio testified that he yelled for Woodward to stop, but Woodward continued riding. D'Onofrio turned into the curb lane of South Chrysler and drew his car parallel to Woodward, who was to the right of D'Onofrio's cruiser. As they both passed a Mobil gas station, D'Onofrio demanded twice more that Woodward halt, but to no avail.

At this point, Woodward and D'Onofrio's stories diverge. D'Onofrio claims that Woodward pedaled faster and began veering to the right, toward an alleyway between the Mobil gas station and an auto-parts-store parking lot. Intending to follow Woodward, D'Onofrio also turned right, accelerating "to get up the curb" and enter the lot. D'Onofrio lost sight of Woodward temporarily because he was scanning ahead for other people or vehicles. As a result, D'Onofrio did not see the accident, but felt Woodward hit the "front passenger side" of his cruiser. Stressing that he did not intend to overtake the bicycle or otherwise make contact, D'Onofrio surmised that Woodward "lost control of [the] bike . . . or was trying to cut" in front of the car.

Not so under Woodward's account. He testified that the road noise and his preoccupation with the fight from earlier in the evening distracted him from noticing D'Onofrio's police car or hearing his commands. Woodward insists that he neither sped up nor turned, but continued straight down the sidewalk. Just before he reached the entrance of the parking lot, he felt the front passenger-side bumper of the cruiser hit his bike. He lost consciousness momentarily after impact, but when he came to, he found himself and his bike pinned beneath D'Onofrio's car.

D'Onofrio acknowledges that he may have pulled the vehicle forward so Woodward could crawl out from underneath. Woodward suffered multiple fractures to his ankles, road rash along his inner left knee, and facial cuts that required stitches.

Woodward sued under 42 U.S.C. § 1983, alleging that D'Onofrio intentionally rammed the vehicle into his bike in order to stop him, thereby violating his Fourth Amendment right to be free from excessive force. D'Onofrio moved for summary judgment based on qualified immunity. The district court denied summary judgment because D'Onofrio's qualified immunity turned on a genuine dispute of material fact over whether he intended to hit Woodward. D'Onofrio filed a notice for interlocutory appeal, and Woodward moved to dismiss the appeal for lack of jurisdiction. We ordered the parties to complete briefing and submit video evidence obtained from two police dashboard cameras so we could properly evaluate jurisdiction, and the parties have complied.

## II.

We may exercise interlocutory jurisdiction over an appeal from the denial of summary judgment based on qualified immunity only to the extent the appeal turns on purely "abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995) (quoting 15A Charles A. Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 3914.10 (2d ed. 1992)). Accordingly, where the district court bases the denial of qualified immunity on a genuine dispute of material fact, we must dismiss challenges to that decision. *Id.* at 319–20; *Romo v. Largen*, 723 F.3d 670, 674 (6th Cir. 2013). The defendant can avoid the jurisdictional bar, however, by "conced[ing] an interpretation of the facts in the light most favorable to the plaintiff's case[,]" thereby leaving only legal issues for our review. *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998).

Because Woodward's § 1983 claim alleges that D'Onofrio violated his Fourth Amendment right to be free from unreasonable seizure, Woodward must show "a governmental termination of his freedom of movement *through means intentionally applied.*"  *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989).  The district court denied D'Onofrio qualified immunity because it found a genuine factual dispute over whether D'Onofrio intended to strike Woodward with his police cruiser.  We therefore lack jurisdiction unless D'Onofrio defers to Woodward's recounting of the facts.  *See Berryman*, 150 F.3d at 562; *see also Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008).

Although he purports to accept Woodward's facts, D'Onofrio makes no effort to do so. *See Thompson v. Grida*, 656 F.3d 365, 368 (6th Cir. 2011) ("Mere conclusory statements that the officers construe the facts in the light most favorable to the plaintiff cannot confer jurisdiction upon this Court.").  Instead, he advances his version of the disputed event, draws inferences in his favor, cites case law that assumes an accidental rather than intentional crash, and attempts to undermine the credibility and sufficiency of Woodward's evidence.  As a result, we are without jurisdiction over his appeal.  *See Johnson*, 515 U.S. at 313, 319–20.

Attempting to revive his challenge, D'Onofrio cites *Scott v. Harris*, 550 U.S. 372 (2007), for the proposition that an appellate court may exercise jurisdiction over an interlocutory appeal if the plaintiff's story "is blatantly contradicted by the record, so that no reasonable jury could believe it."  *Id.* at 380.  He argues that "direct" photographic and video evidence controvert Woodward's narrative, requiring us to accept his factual recitation.

D'Onofrio's evidence fails to support his argument because, unlike *Scott*, where dash cams filmed an entire chase and crash from start to finish, *see id.* at 378–81, the videos and photographs here capture only the collision's aftermath.  Moreover, the images of the aftermath

do not "blatantly contradict" Woodward's story, let alone establish D'Onofrio's intent at the time of impact. As such, D'Onofrio cannot sidestep our conclusion that we lack jurisdiction to hear his appeal.

### III.

For the reasons above, we DISMISS D'Onofrio's appeal.